Jack BUZZARD et al., Plaintiffs-Appellees,

v.

**LOCAL LODGE 1040 INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS et al., Defendants-Appellants.**

Margaret ALLEN et al., Plaintiffs-Appellees,

v.

**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, LOCAL LODGE 1040 et al., Defendants-Appellants.**

Nos. 72-1400, 72-1401.

United States Court of Appeals, Ninth Circuit.

March 30, 1973.

Rehearing Denied June 29, 1973.

John E. Rinehart (argued), Hugh Hafer, M. Lee Price, Donaldson, Hafer, Cassidy & Price, Seattle, Wash., Plato E. Papp, Washington, D. C., for plaintiffs-appellees.

Frederick V. Betts (argued), Joan Smith Lawrence, W. R. McKelvy, Skeel, McKelvy, Henke, Evenson & Betts, Seattle, Wash., for defendants-appellants.

Before BROWNING, WRIGHT, and WALLACE, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Local Lodge 1040, International Association of Machinists & Aerospace Workers [Local 1040, IAMAW] and two of its officers appeal from an order of the trial court permanently enjoining them from bringing or pursuing certain disciplinary action against members of IAMAW.[1]

Plaintiffs below were members of Local 1040, IAMAW, employed by Northwest Airlines [NWA] at Seattle-Tacoma Airport[2] and Spokane International

---

1. IAMAW is occasionally referred to as IAM.

2. Allen, Thompson, Fortier, Hughes, Buzzard, Cramer, Johnson, White, and Wirth.

Airport [3] when, on July 8, 1970, employees of NWA represented by the Brotherhood of Railway, Airline and Steamship Clerks [BRAC] went on strike against NWA. BRAC personnel established picket lines at most of NWA's facilities, including those at Seattle-Tacoma and Spokane International Airports.

The IAMAW instructed its members to not cross the BRAC picket lines. NWA, however, ordered plaintiffs to return to work and the plaintiffs complied with this order. Finally, the IAMAW agreed with NWA that its members would return to work based on guidelines dated December 8, 1970. The IAMAW members returned to work under this agreement, and the BRAC strike was subsequently settled.

In September of 1971 plaintiffs were individually notified by defendant Nasi, Chairman of the Trial Committee of Local 1040, that charges had been preferred against them by fellow members of Local 1040. Specifically, they were charged with failure to follow instructions from the IAMAW not to cross the BRAC picket line in violation of Article L Section 3 of the IAMAW Constitution.

The letters of notification included the following comments:

"[T]he President of Local Lodge 1040, Brother Leroy Hesner, has appointed a Trial Committee to consider the charges preferred against you by [a fellow member of the local].

"The Trial Committee has investigated these charges and decided that there is sufficient substance to these charges to warrant a trial to be held.

"Therefore, you are hereby notified that a hearing will be held. . . ."

Prior to the date scheduled for that hearing, plaintiffs Buzzard et al. filed a "Petition for Injunction Against Local Lodge 1040 of I.A.M.A.W. to Hold Hearings Against Plaintiffs" in Superior Court for King County, Washington. Prior to a hearing in Superior Court the defendants filed a timely petition for removal and the cause was removed to the district court below.

On November 5, 1971, the district court entered a temporary restraining order prohibiting the local from conducting the disciplinary hearings pending a hearing on the merits of plaintiffs' suit for an injunction. On November 8 plaintiffs Allen et al. filed a petition in the district court below for a similar injunction, and the court entered a temporary restraining order pending a hearing on the merits.

After a hearing on the merits, the court granted the permanent injunctions on December 17, 1971. The defendants filed a timely petition for appeal to this court, and this court, finding the two cases to involve common questions of fact and law, ordered them consolidated on appeal.

The context in which this suit has arisen involves a complex and extensive factual background. A chronological detailing of the events leading up to the proposed disciplinary hearings is necessary to a proper understanding of our disposition of this case.

When BRAC struck NWA on July 8, 1970, NWA notified 3,500 IAMAW-represented employees that they were laid off. On July 18, 1970 and thereafter, NWA notified certain IAMAW-represented employees to return to work. These were recalled in accordance with the seniority provisions of the collective bargaining agreement in effect between the IAMAW and NWA at that time. While some of those ordered to return to work did so [including the plaintiffs below], the majority did not, apparently in obedience to IAMAW orders not to cross the BRAC picket lines.

NWA then filed a submission with the NWA-IAMAW System Board of Adjustment pursuant to the Railway Labor Act, seeking to invoke its jurisdiction to determine if, under the terms of the NWA-IAMAW collective bargaining agreement, the recalled employees had

3. Batson, Bockheim, Jenks, McGinn, and Nunn.

an obligation to return to work and if their failure to do so resulted in automatic loss of their seniority.

The day after this submission was filed, NWA sued in a United States District Court to enjoin the IAMAW from alleged violations of the Railway Labor Act. The gravamen of its complaint was that the IAMAW was violating the IAMAW-NWA collective bargaining agreement by discouraging its employees from reporting to work.[4] The court denied a preliminary injunction,[5] and NWA appealed.

The United States Court of Appeals, Eighth Circuit, found the single underlying issue of the dispute between the parties to be

"whether IAM, in the light of the no-strike provision of the bargaining agreement, retains the right to instruct its members to honor the picket lines of a sister union." [6]

Accordingly, the court, on November 25, ordered that issue submitted to the NWA-IAMAW System Adjustment Board pursuant to § 204 of The Railway Labor Act,[7] directing that Board to render a prompt decision.

Prior to the issuance of an award by the System Board of Adjustment, NWA and IAMAW verbally agreed under "Guidelines for Recall of Mechanics and Related Personnel Represented by IAM," dated December 8, 1970, that:

There will be no reprisals, recriminations, disciplinary actions, grievances or reprimands by either party against any employee represented by IAM because of any action or nonaction during or arising from the strike.[8]

Pursuant to the guidelines and in consideration of the return to work of IAMAW-represented employees, IAMAW and NWA signed an agreement on December 9, 1970, which included the following condition:

Northwest Airlines and the IAM, their members and their officers, will not initiate any further actions or proceedings in any court or before any agency or in any other forum seeking damages or any other relief for any claim or cause arising out of the circumstances of the strike by the BRAC against Northwest Airlines which commenced on July 8, 1970.[9]

On December 14, 1970, while IAMAW-represented employees were returning to work, the System Board of Adjustment made this award:

IAM, in the light of the no-strike provision of the bargaining agreement does not retain the right to instruct its members to honor the picket lines of a sister union.

We note that the System Board of Adjustment expressly indicated that its award was a limited one:

. . . we deem it well to point out that we are not here concerned with matters of discipline or discharge of individuals for refusing to cross picket lines of sister unions. Our sole concern is with the "no-strike" clause as it affects *Union* conduct.

The Board filed its award with the panel of the United States Court of Appeals, Eighth Circuit, which had ordered the issue submitted. The panel had retained jurisdiction that it might decide the appeal from the denial of the tempo-

---

4. Article XXV, Section K of the IAMAW–NWA collective bargaining agreement dated January 1, 1969, provides as follows:

"It is understood and agreed that the Company will not lock out any employee covered hereby and the Union will not authorize or take part in any strike or picketing of Company premises during the life of this agreement until the procedures for settling

disputes as provided by the Railway Labor Act have been exhausted."

5. Northwest Airlines, Inc. v. IAMAW, 323 F.Supp. 107 (D.Minn.1970).

6. Northwest Airlines, Inc. v. IAMAW, 442 F.2d 244, 246 (8th Cir. 1970).

7. 45 U.S.C. § 184.

8. Stipulated fact No. III below.

9. Stipulated fact No. IV below.

rary injunction. In its decision on January 18, 1971,[10] the court took judicial notice of developments subsequent to their earlier order: namely, that NWA and BRAC had settled the strike and that BRAC had withdrawn its picket lines. In light of these facts, the court concluded that no temporary relief was required, noting that the complaint seeking a permanent injunction remained with the district court.

The district court, on remand, ordered the petition for a permanent injunction dismissed as moot.[11] Subsequently, NWA moved the court to amend this order, in light of certain alleged IAMAW conduct. Specifically, NWA alleged that IAMAW members who had crossed BRAC picket lines were being disciplined at the local lodge level, and that at least in one instance appeals taken within the union hierarchy resulted in an affirmance by IAMAW President Smith and the IAMAW executive council, in violation of both the December 9 agreement and the award of the System Board of Adjustment.

The district court declined to amend its order holding, inter alia, that NWA did not have standing to assert the claim that it was making.[12] Both of these decisions of the trial court were affirmed by the Court of Appeals, Eighth Circuit, in an unpublished per curiam opinion of November 27, 1972.

The disciplinary hearings referred to by the NWA have been the subject of other lawsuits. Adadczewski v. Local Lodge 1487, IAMAW (unreported decision of D.C.N.D.Ill., December 14, 1972);[13] Verville et al. v. IAMAW (unreported decision of D.C.E.D.Mich., April 25, 1972). We come to the case before this panel.

Title I of the Labor-Management Reporting and Disclosure Act of 1959 [14] establishes a "Bill of Rights of Members of Labor Organizations." Section 411(a)(4) of that title provides for the protection of the right to sue:

"No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, . . .: Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: . . . ."

Defendants claim that the action brought by plaintiffs was premature for failure to exhaust intra-union remedies, and they ask this court to reverse the order of the district court granting the injunction. They would have us exercise our discretion to require plaintiffs first to submit their defenses at disciplinary hearings.

■ Plaintiffs contend that the exhaustion doctrine has no applicability to their cause of action. They would have us style their suit as one seeking enforcement of the December 14, 1970

---

10. Northwest Airlines, Inc. v. IAMAW, 442 F.2d 250 (8th Cir. 1971).

11. Northwest Airlines, Inc. v. IAMAW, 332 F.Supp. 1330 (D.Minn.1971).

12. Northwest Airlines, Inc. v. IAMAW, 336 F.Supp. 1117 (D.Minn.1972).

13. The court there dismissed a petition for an injunction that would have prohibited the local lodge from holding the disciplinary hearings on the grounds that the employees' suit was being financed

by NWA, in violation of the final proviso of 29 U.S.C. § 411(a)(4):

"And provided further, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition."

At oral argument counsel for defendants indicated that they made no contention that NWA was financing the suits presently before this panel.

14. 29 U.S.C. § 401 et seq.

award rendered by the System Board of Adjustment. It is well established that such an award is entitled to enforcement by the federal courts. Machinists v. Central Airlines, 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963).

■ The short answer to plaintiffs' contention is that the System Board of Adjustment expressly stated that its award was not based on any consideration of "matters of discipline . . . of individuals for refusing to cross picket lines of sister unions." Instead, the sole concern of the award was "with the 'no-strike' clause as it affects *Union* conduct." Therefore we do not reach the issue whether the exhaustion doctrine applies to suits to enforce an award rendered by a System Board of Adjustment. By the terms of the award, it does not apply to the disciplinary hearings which plaintiffs face. Accordingly, the injunctive relief granted below could not be based on that award.[15]

The district court did have jurisdiction, however, over plaintiffs' suits. Under § 301 of the Labor Management Relations Act of 1947,[16] an employee may sue his employer for breach of a promise embedded in the collective bargaining agreement that was intended to confer a benefit upon the individual. Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). Section 301 also will support a suit by a union member against his union seeking redress from union interference with rights conferred on employees by employer promises in the collective bargaining agreement provided that such interference constituted a breach of the duty of fair representation. Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); *see also* Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S. Ct. 681, 97 L.Ed. 1048 (1953); Falsetti v. Local 2026, U.M.W., 355 F.2d 658 (3rd Cir. 1966).

■ Fair representation is a statutory duty of the union to represent fairly all its members, both in the conduct of collective bargaining and in the enforcement of the resulting collective bargaining agreement. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Humphrey v. Moore, *supra.* *See also*, Motor Coach Employees v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971). As the Supreme Court stated in Vaca v. Sipes, *supra*:

> "Under this doctrine, the [union's] statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id.*, 386 U.S. at 177, 87 S.Ct. at 910.

■ While we have been unable to find any case for the proposition that § 301 will support a suit by a union member against his union for redress from union refusal to honor rights conferred on employees by *Union* promises in the collective bargaining agreement, we are convinced that § 301 does confer such jurisdiction. The union's duty of fair representation is equally violated when it refuses arbitrarily and in bad faith to honor *its* obligations, under a collective bargaining agreement, which are designed to benefit its members.

■■ Of course, for such a claim to succeed, there must be "substantial evidence of fraud, deceitful action, or dishonest conduct" on the part of the union. Motor Coach Employees v. Lockridge, *supra*, 403 U.S. at 299, 91 S.Ct. 1909; Humphrey v. Moore, *supra*, 375 U.S. at 348, 84 S.Ct. 363. It is clear that under this standard, plaintiffs' complaints conferred jurisdiction on the district court.[17]

---

15. Apparently *contra*, without any discussion of the express limitation in the Board's award, is Verville et al. v. IAMAW, *supra.*

16. 29 U.S.C. § 185.

17. We do not base this determination on plaintiffs' allegation of a violation of the

We are left with the question whether the trial court properly exercised its discretion in not requiring plaintiffs to exhaust first their intra-union remedies before seeking relief from the courts. It is clear that the determination whether to require such exhaustion is left to the sound discretion of the court. *NLRB v. Industrial Union of Marine & Shipbuilding Workers*, 391 U.S. 418, 426, 88 S.Ct. 1717, 1723, 20 L.Ed. 2d 706 (1968):

"[29 U.S.C. § 411(a)(4) is] a statement of policy that the public tribunals whose aid is invoked may in their discretion stay their hands for four months, while the aggrieved person seeks relief within the union."

We start with the proposition that generally a member aggrieved by an act of his union must exhaust his intra-union remedies "in the absence of a showing that it would be futile or that the remedies are inadequate." *Frederickson v. System Fed. No. 114 of Ry. Emp. Dept.*, 436 F.2d 764 (9th Cir. 1970).

The only allegation of futility presented by plaintiffs was contained in an affidavit submitted by Donald W. Nyrop, President of NWA:

"IAM represented employees who worked for NWA in Milwaukee, Wisconsin during the BRAC strike were charged, tried and fined by the Milwaukee local of IAM earlier this year. Based on information and belief the disciplinary action and fines levied against the Milwaukee members were appealed by those members to the IAM international office. Contrary to the commitment made to me by Mr. Winpisinger [18] the action of the local was affirmed on appeal. . . . This conduct by the IAM constitutes a breach of the understanding I had with Mr. Winpisinger as embodied in the Guidelines of December 8, 1970, the agreement which we signed on December 9, 1970 and our oral understanding reached on or about December 7, 1970." [19]

We do not find this a sufficient showing that the intra-union remedies available to plaintiffs would be futile or inadequate to resolve their claims.

A primary reason for the existence of the exhaustion doctrine is that prior union action interpreting union rules and perhaps also further refining and defining the problem may well assist the court when it is later called upon to resolve the controversy. *Detroy v. American Guild of Variety Artists*, 286 F.2d 75 (2d Cir. 1961). Another justification for the doctrine is, of

January 1, 1969, NWA–IAMAW collective bargaining agreement, but rather on their contention that the disciplinary hearings are in violation of the December 1970 agreements. The latter agreements are "contracts" cognizable under § 301(a). *Retail Clerks v. Lion Dry Goods*, 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962).

18. William W. Winpisinger, General Vice President of IAMAW.

19. Plaintiffs petitioned the district court to enjoin the disciplinary hearings on the grounds that the holding of the hearings was in violation of the December 1970 agreements, and yet their affiant, Mr. Nyrop, concedes that local disciplinary hearings were not uncontemplated under the December agreements:

During discussion on or about December 7, 1970, leading to the agreement which was signed by Mr. Winpisinger and myself on December 9, 1970, Mr. Winpisinger insisted that NWA give up its right to discipline any employee who refused to work during the BRAC strike. In turn, I insisted that IAM must give up its right to discipline its members who did work during the BRAC strike. We had a complete understanding that neither party could discipline such persons for conduct during the strike. However, Mr. Winpisinger advised me that he had a practical problem making such a commitment with respect to disciplinary action commenced at the local level. He stated that if any action were commenced at the local level which resulted in discipline or fines against any member who worked during the BRAC strike, such local action would be reversed when the matter was appealed to the international level and that he would personally handle the matter.

course, conservation of judicial resources. The issue that will be before the union if we allow these hearings to be held will be the interrelationship of the IAMAW Constitution and the IAMAW-NWA collective bargaining agreement, as amended.

None of the parties to this suit has cited to us any authority which helps to resolve this difficult issue. Accordingly, this would appear to be an instance where both justifications for requiring exhaustion are present. The union may uphold plaintiffs' defense, and the issue would become moot, requiring no judicial intervention. And even should plaintiffs ultimately be disciplined, the fact that the union will have had the opportunity to interpret its own constitution will be of significant help to any court subsequently considering this case.[20]

Few cases have dealt with a union member charged by his union with wrongdoing who sought pretrial relief in the courts. The case most directly in point is Baron v. North Jersey Newspaper Guild, American Newspaper Guild, 342 F.2d 423 (3rd Cir. 1965), reversing 224 F.Supp. 85 (D.C.), where employees had instituted de-authorization proceedings before the NLRB, and their union was attempting to discipline them for it. The district court, noting that any union prosecution would violate 29 U.S.C. § 529, held that no harm was done by enjoining the union from trying the employees. The court of appeals reversed, noting that

> "in circumstances where relief from past union action is sought, courts have required the exhaustion of intra-union remedies except in those rare instances where a showing has been made that a union cannot do substantial justice because of the inadequacy of procedural mechanisms or the existence of clear substantive bias against the party seeking judicial re-

lief. Analogizing from this developing concept, it would be anomalous indeed to refuse to apply such a standard where union action jeopardizing a member's rights has yet to be taken, and exceptional circumstances have neither been demonstrated nor even alleged." 342 F.2d at 424.

More recently, a district court held that when prospective candidates for union elections face union disciplinary hearings based on charges clearly void under the Labor-Management Reporting and Disclosure Act, "exceptional circumstances" have been shown and the court accordingly granted an injunction to halt the hearings. Sheridan v. Liquor Salesmen's Union, Local 2, 303 F.Supp. 999 (S.D.N.Y.1969).

We do not find such exceptional circumstances here. In the absence of a showing that it would be futile for plaintiffs to present their defense at their intra-union disciplinary hearings, and because of the appropriateness of exhaustion in this case, we therefore reverse the action of the district court granting a permanent injunction.

20. We express no opinion on the merits of plaintiffs' defense to the charges brought against them. *Cf.* NLRB v. Allis-Chalmers Manufacturing Co., 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967).