Robert F. VERVILLE, and John G. DeBruyn, Plaintiffs-Appellees,

v.

INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS et al., Defendants-Appellants.

Robert F. VERVILLE, and John G. DeBruyn, Plaintiffs-Cross-Appellants,

v.

INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS et al., Defendants-Cross-Appellees.

Nos. 74–1914 and 74–1915.

United States Court of Appeals, Sixth Circuit.

Aug. 5, 1975.

Gregory, Van Lopik & Higle, J. Douglas Korney, Detroit, Mich., Plato E. Papps, Washington, D.C., for defendants-appellants and defendants-cross-appellees.

James E. Tobin, Miller, Canfield, Paddock & Stone, Detroit, Mich., for Verville and DeBruyn.

Before WEICK, CELEBREZZE and McCREE, Circuit Judges.

WEICK, Circuit Judge.

This appeal is from an order of the District Court granting summary judgment in favor of the plaintiffs and enjoining the defendant unions from conducting disciplinary proceedings against the plaintiffs on account of the fact that plaintiffs, in reporting for work, crossed picket lines of a sister union. The facts were all stipulated.

Plaintiffs are employees of Northwest Airlines at Metropolitan Airport, Wayne County, Michigan. They are members of Detroit Air Transport Lodge 141 (Lodge 141) and its parent International Associ-

ation of Machinists and Aerospace Workers (IAMAW).

During the latter part of the year 1970 a sister union, namely, the Brotherhood of Railway and Airline Clerks (BRAC), engaged in a strike against Northwest and in connection therewith it established a picket line at Northwest facilities at Detroit Metropolitan Airport. At that time there was in full force and effect a collective bargaining agreement between Northwest and the defendant unions, which agreement contained a no-strike clause reading as follows:

> It is understood and agreed that the Company will not lock out any employee covered hereby and the Union will not authorize or take part in any strike or picketing of Company premises during the life of this Agreement until the procedures for settling disputes as provided herein and as provided by the Railway Labor Act have been exhausted.

Plaintiffs were instructed by Lodge 141 not to cross the BRAC picket lines and not to report for work at Northwest during the existence of the picket lines. Plaintiffs were directed by their employer Northwest to report for work; and they did cross the BRAC picket lines and continued to work during the BRAC strike, which ended on December 14, 1970.

In accordance with the provisions of Section 204 of the Railway Labor Act, 45 U.S.C. § 184, Northwest and IAMAW had established a System Board of Adjustment (SBA) for resolution of disputes between them. On December 14, 1970, pursuant to a directive of the United States Court of Appeals for the Eighth Circuit, in an action which had been instituted by Northwest against IAMAW,[1] SBA rendered a decision on the question referred to·it by the Court, "Whether IAM in the light of the no-strike provisions of the bargaining agreement, retained the right to instruct its members to honor the picket lines of a sister Union."

The decision of SBA was as follows:

## Award

IAM, in the light of the no-strike provisions of the bargaining agreement does not retain the right to instruct its members to honor the picket lines of a sister Union.

On December 8, 1970, shortly before the end of the BRAC strike, Northwest and IAMAW entered into an agreement for the return to work of IAMAW personnel, which agreement in relevant part provided as follows:

> VI. There will be no reprisals, recriminations, disciplinary actions, grievances or reprimands by either party against any employee represented by IAMAW because of any action or non-action during or arising from the strike.

On December 9, 1970 Northwest and IAMAW entered into a further agreement which provided in part as follows:

> 4. Northwest Airlines and the IAMAW, their members and their officers, will not initiate any further actions or proceedings in any court or before any agency or in any other forum seeking damages or any other relief for any claim or cause arising out of the circumstances of the strike by the BRAC against Northwest Airlines which commenced on July 8, 1970.

On or about December 20, 1971 the plaintiffs were served with charges and a notice of hearing to be held before a union trial committee. Although the union has agreed not to proceed with the charges pending final decision in this cause, if the final decision permits the union to do so it will proceed with the trial of plaintiffs herein for their conduct in crossing the BRAC picket lines.

On July 14, 1971 Floyd E. Smith, International President of IAMAW, rendered a decision in another case involving the crossing of BRAC picket lines, denying the appeal of a member who

---

1. *Northwest Airlines, Inc. v. International Ass'n of Machinists*, 442 F.2d 244 (8th Cir. 1970).

had been found guilty by a trial committee of Local Lodge 1904.

The plaintiffs filed suit against the labor unions in the District Court on January 26, 1972. Count I of the complaint asked for enforcement of the SBA award. Count II asked for enforcement of the agreements of December 8 and 9, 1970.

Two other Circuits have decided cases similar to the instant case, arising from the crossing of BRAC picket lines by IAMAW members. *Adamszewski* v. *Local 1487, International Ass'n of Machinists,* 496 F.2d 777 (7th Cir. 1974), *cert. denied,* 419 U.S. 997, 95 S.Ct. 311, 42 L.Ed.2d 271; *Buzzard* v. *Local 1040, Int'l Ass'n of Machinists,* 480 F.2d 35 (9th Cir. 1973).

Relying on *Adamszewski* and *Buzzard,* the District Court dismissed Count I; however, it granted the relief prayed for under Count II. Plaintiffs have cross-appealed from the order dismissing Count I. In our opinion the District Court had jurisdiction of both Counts I and II. It should not have dismissed Count I.

## I

■ It is well established that under 28 U.S.C. §§ 1331 or 1337, a federal court has jurisdiction of a suit to enforce an award of an airline System Board of Adjustment. *International Ass'n of Machinists* v. *Central Airlines, Inc.,* 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963); *Diamond* v. *Terminal Ry. Alabama State Docks,* 421 F.2d 228 (5th Cir. 1970).

The District Court also indicated that it had jurisdiction of Count II under the reasoning of the *Central Airlines* case. In *Central Airlines* the Supreme Court examined the history and purpose of the Railway Labor Act. In particular it noted that the National Railroad Adjustment Board was established by the Act with power to make final and binding awards enforceable in federal courts. 45 U.S.C. § 153 *First.* Although voluntary system, group, or regional boards could be established and utilized, in the event

that either party is dissatisfied with such arrangement it may elect to come under the jurisdiction of the Adjustment Board. 45 U.S.C. § 153 *Second.*

When Congress extended the Railway Labor Act to cover airlines, it provided that 45 U.S.C. § 153 would not apply to the airlines. Instead, pending establishment of a National Air Transport Adjustment Board Congress provided in § 204 of the Act, 45 U.S.C. § 184, that carriers and their employees had the duty to create System Boards of Adjustment.

The Supreme Court held:

Congress intended no hiatus in the statutory scheme, 372 U.S. at 690, 83 S.Ct. at 961.

Federal law required the parties to enter into a contract establishing a System Board of Adjustment. Therefore, pursuant to 28 U.S.C. §§ 1331 or 1337, federal courts had jurisdiction of suits to enforce awards of airline System Boards of Adjustment.

■ In contrast, § 204 of the Railway Labor Act has nothing to do with the applicability of the December 8th and 9th agreements to the dispute of the plaintiffs with their union. An airline System Board of Adjustment does not have jurisdiction of a dispute between a union and a union member. *Brady* v. *Trans World Airlines, Inc.,* 401 F.2d 87 (3d Cir. 1968), *cert. denied,* 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969).

In our opinion the District Court had pendent jurisdiction of the claims under Count II. The claims under Counts I and II "derive from a common nucleus of operative fact" and "are such that he [the plaintiffs] would ordinarily be expected to try them all in one judicial proceeding . . . ." *United Mine Workers* v. *Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Gray* v. *International Ass'n of Heat & Frost Insulators & Asbestos Workers, Local 51,* 447 F.2d 1118 (6th Cir. 1971).

## II

■ *Buzzard* and *Adamszewski, supra,* held that the award of the System Board of Adjustment was limited in scope and did not cover the matter of discipline by IAMAW of its members who crossed the BRAC picket line. We disagree. These two decisions focused on the following language in the opinion of the Board:

> . . . [W]e deem it well to point out that we are not here concerned with matters of discipline or discharge of individuals for refusing to cross picket lines of sister unions. Our sole concern is with the "no-strike" clause as it affects *Union* conduct (43a)

We believe that the Board language quoted above is directed to excluding only matters of discipline or discharge which might be open to Northwest. The union would have no occasion to discipline its members for refusing to cross a picket line because that is the very thing it wanted its members to do; and of course the union could not discharge an employee of Northwest. Only the employer could do that.[2]

The question before the Board was whether IAMAW had the right under the collective bargaining agreement to instruct its members to recognize the picket line of a sister union.

In contrast, when the Board held that IAMAW did not have the right to instruct its members not to cross the BRAC picket line, it necessarily held that union members were required by the collective bargaining agreement to cross the BRAC picket line.

IAMAW's power to discipline union members who crossed the BRAC picket line is inconsistent with such a "no-strike" pledge.[3] A union, knowing that it could enforce obedience to a strike directive which was illegal under the collective bargaining agreement, might be tempted to issue such a directive to obtain a tactical advantage under some circumstances. In addition, it should be noted that if a union could enforce such an illegal directive, a union member would be placed in the position of either obeying such an illegal directive, and possibly suffering discipline from his employer, or disobeying such a directive and possibly suffering discipline from his union.

■ In the case of a *lawful* economic strike, a union's power to discipline strikebreaking members is integral to federal labor policy. *NLRB* v. *Allis-Chalmers Mfg. Co.,* 388 U.S. 175, 181, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967). That policy is not involved in the case of a strike prohibited by a valid and existing collective bargaining agreement. In fact, union discipline of members who observed the terms of the collective bargaining agreement would appear to undermine the policy favoring stable labor relations and the observance of such agreements exemplified by the enforceability of System Board of Adjustment awards and the existence of 29 U.S.C. § 185 in the labor relations area outside of the Railway Labor Act.

## III

■ The December 8 and 9, 1970 settlement agreements were broadly drawn. In the December 8th agreement both parties promised:

> There will be no reprisals, recriminations, disciplinary actions, grievances or reprimands by either party against any employee represented by IAMAW

---

2. The fact that the Board explicitly excluded questions of employer discipline, while not doing so with respect to questions of union discipline, is some indication that the Board realized that its award implicitly covered questions of union discipline.

3. *See Morton Salt Co.* v. *NLRB,* 472 F.2d 416, 420 (9th Cir. 1972), *vacated and remanded on* *other grounds,* 414 U.S. 807, 94 S.Ct. 37, 38 L.Ed.2d 43 (1973), where the Ninth Circuit said:

> . . . [A] no-strike provision directed to the union amounts to a waiver of a right of that union to regulate certain activities of its members in accordance with union rules . . . . .

because of any action or non-action during or arising from the strike.

In the December 9th agreement IAMAW promised that neither it nor its members would "initiate any further actions or proceedings . . . in any other forum seeking damages or any other relief for any . . . cause . . .."

The institution of disciplinary proceedings is both a "reprisal" and a "recrimination" against the plaintiffs here. Arguably, "disciplinary action" in the December 8th agreement includes the disciplinary proceeding itself, and not merely the penalty imposed. With respect to the December 9th agreement, a disciplinary proceeding is a "proceeding" before a union trial council "forum" seeking the "relief" of imposition of penalties against the plaintiffs. The institution of the proceeding was a deliberate and willful violation of the December 8th and 9th agreements.

IAMAW urged below and also here that the filing of the disciplinary charges was an "individual action" on the part of IAMAW members. The December 8th and 9th agreements clearly indicate that IAMAW undertook to bind its members. Even if it had not bound its members, it had bound itself not to process such charges, and it was attempting to do just that here. In addition, it is difficult to understand what IAMAW undertook to do in the December 8th agreement if not to bar the "individual actions" of its members against fellow members who had crossed the BRAC picket line.

In our opinion the December 8th and 9th agreements preclude IAMAW from either filing or processing such charges against its members.

IAMAW has argued that even if the agreements do prohibit the disciplinary proceedings, violation is compensable in damages, and that there is no irreparable injury, and no injunction may issue to enforce the agreements.

In our opinion, absent injunctive relief, there would be irreparable injury. The agreements were meant to protect union members who crossed the BRAC picket lines, not only from fines or expulsion from IAMAW, but also from the anxiety, fear, and opprobrium of disciplinary proceedings, or other retaliation. For example, even "recriminations" were prohibited by the December 8th agreement.

In the light of the anxiety, fear, and opprobrium that disciplinary proceedings would create, we must conclude that there is irreparable injury, contrary to the conclusion of the Seventh Circuit in *Adamszewski* v. *Local 1487, Int'l Ass'n of Machinists,* 496 F.2d 777, 786–787 (7th Cir. 1974), *cert. denied,* 419 U.S. 997, 95 S.Ct. 311, 42 L.Ed.2d 271.

### IV

Section 101(a)(4) of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(4) (which protects the right of a union member to bring an action against his union) contains the following additional proviso:

That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof . . ..

IAMAW claims that the plaintiffs herein could have raised the award of SBA and the December 8 and 9, 1970 settlement agreements as defenses in its disciplinary proceedings.

■■ Under § 101(a)(4) exhaustion of intra-union hearing procedures is not mandatory in all cases. Federal courts have discretion to determine whether a litigant must pursue such internal union remedies. *McCraw* v. *United Ass'n of Journeymen,* 341 F.2d 705, 711 (6th Cir. 1965). When internal union remedies are inadequate or illusory, or when the union has taken a consistent position in opposition to that of a plaintiff, and exhaustion therefore would be futile, exhaustion is not required. *Semancik* v. *UMW, Dist. 5,* 466 F.2d 144, 151 (3d Cir. 1972).

■ The District Court held that in light of the decision of IAMAW's International President affirming the guilty verdict by a union trial committee in a similar case, IAMAW had taken a definite position contrary to that of the plaintiffs here, and exhaustion would be futile.

IAMAW notes that the disciplinary action, to which reference was made in the stipulations, involved a different Local Lodge, and that a decision of the International President is appealable first to the Executive Council and then to the Grand Lodge convention. The stipulations do not note whether an appeal was taken in the aforementioned disciplinary action.

We conclude that the District Court's finding of fact is not clearly erroneous, and in no respect did the Court abuse its discretion. The Local Lodge trial committee determined that the charges contained sufficient substance to warrant a trial. The International President is chairman of the Executive Council, and there is nothing in the stipulation to indicate that either the Executive Council or any future convention might disagree with the position taken by the International President as to the applicability of the settlement agreements and the System Board of Adjustment award to disciplinary proceedings. We emphasize the fact that the award and the agreements clearly prohibit the infliction of fines and other disabilities upon union members as the result of crossing the BRAC picket line and, yet, the International President affirmed the conviction.

This demonstrates a disregard for the award and the agreements, by a very important union official who, in the absence of any evidence to the contrary, can be assumed to state the IAMAW position.

A good reason for not requiring exhaustion is that union procedures for presenting the defense of the December 8 and 9, 1970 settlement agreements are illusory and inadequate. The agreements prohibit IAMAW from subjecting the plaintiffs herein to disciplinary procedures. In order to present the defense of the settlement agreements the plaintiffs would have to subject themselves to such procedures. The plaintiffs are not required to exhaust illusory and inadequate internal union procedures. *Detroy v. American Guild of Variety Artists,* 286 F.2d 75 (2d Cir. 1961), *cert. denied,* 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388.

In our opinion exhaustion, in and of itself, would violate the agreements of December 8 and 9, 1970.

V

Pursuant to agreement reached at a pretrial conference, the parties entered into a Stipulation of Facts which was filed on June 25, 1972.

Each party filed a motion for summary judgment on the ground that there was no genuine issue of any material fact. Defendants' motion was filed on June 15, 1972, and plaintiffs' motion was filed on October 11, 1972. The motions were heard by the District Court and were taken under advisement on October 16, 1972.

About sixteen months after the Court had taken the motions under advisement the defendants filed a motion to amend the Stipulation of Facts in order to raise an additional affirmative defense not embraced in the Stipulation, not pleaded in defendants' answer, and not asserted in any of the briefs filed in support of their motion for summary judgment.

The defense sought to be raised was based on an alleged violation by Northwest of Section 101(a)(4) of the Labor Management Reporting and Disclosure Act as amended, 29 U.S.C. § 411(a)(4), which in relevant part provides:

That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

It is axiomatic that a stipulation cannot be amended unilaterally by only one of the parties to the agreement, and Northwest has not agreed, although it

did not deny, that it was involved in financing plaintiffs' suit. It is not understandable why the unions waited sixteen months after the case had been submitted to the Court, before raising an issue that they must have known about all along.

The motion to amend was the only relief sought. The District Court properly denied such motion, as it had no authority to amend a stipulation without the consent of both parties.

Moreover, the above-quoted statutory provision is directed at employers. We do not read it as vitiating a valid cause of action possessed by a employee.

The judgment of the District Court is affirmed.