James M. MAHAN

v.

REYNOLDS METALS COMPANY and The Reynolds Retirement Plan.

No. LR–C–83–70.

United States District Court, E.D. Arkansas, W.D.

July 28, 1983.

J. Bruce Cross, Little Rock, Ark., for plaintiff.

Robert Lindsey, Little Rock, Ark., for defendants.

## MEMORANDUM AND ORDER

EISELE, District Judge.

Pending before the Court is the defendant's motion for summary judgment. For the reasons stated below, the motion will be granted.

The essential facts of this case are generally undisputed. Since July 31, 1963, the plaintiff has been an employee at the Hurricane Creek Plant of the defendant Reynolds Metals Company ("Reynolds") and a member of the collective bargaining unit for which the International Union, United Steelworkers of America ("Steelworkers") is the recognized representative. The plaintiff is also a participant in the Reynolds Metals Company Pension Plan for Hourly Employees, Plan No. 002 ("Pension Plan") which is incorporated by reference into the collective bargaining agreement existing between Reynolds and the Steelworkers.

Article XXXVI of the collective bargaining agreement further declares that "the parties agree to comply with and be bound by all of [the Pension Plan's] terms and provisions."

It appears that the plaintiff sustained on-the-job injuries in 1966, 1973 and 1978. He has been on leave of absence from his employment since June 1978, receiving worker's compensation and supplemental insurance benefits. In April 1980 he requested that he be allowed to return to his job as a Stores Clerk, but Reynolds refused his request for the reason that the company believed he was not physically capable of doing the work. The dispute between plaintiff and Reynolds was ultimately resolved through binding arbitration. In his Opinion signed July 7, 1981, Permanent Umpire Howard A. Cole found that the plaintiff did not have the capacity to return to the Stores Clerk job. The Umpire declined, however, to go beyond the narrow issue presented to him, and stated that he would not rule whether there was some other job classification for which the plaintiff was suited. In concluding, he noted that the issue of permanent disability was neither claimed nor proved in the case before him.

In an about face, the plaintiff on August 13, 1981, made a written application pursuant to the terms of the Pension Plan requesting disability retirement benefits on the ground that he was totally disabled and could not return to work at Reynolds. The Pension Committee reviewed the application and rejected it because it found that there was bargaining unit work that the plaintiff was capable of doing. In December of 1981 the plaintiff notified Reynolds that he was appealing the decision of the Pension Committee pursuant to the terms of the Pension Plan. Adhering to the appeals procedure, the plaintiff selected his private physician and Reynolds selected their company doctor, and when the two doctors could not agree on the plaintiff's capability for work, a third physician was chosen by mutual agreement of the first two physicians. The third physician, Dr. T.M. Durham, agreed with the company physician that the plaintiff could perform any one of three different jobs in the bargaining unit. Thus the appeals procedure specified by the Pension Plan was followed and a majority of the "Medical Board of Physicians" found that the plaintiff was not prevented from engaging in a bargaining unit occupation and therefore was not "permanently incapacitated."

The Pension Plan provided that "the medical opinion of a majority of such Medical Board shall be final and binding upon the Company, the Union and the Employee." Nevertheless, shortly after the Medical Board issued its decision, the plaintiff filed a grievance with respect to the Board's decision, only to withdraw the grievance on November 29, 1982. This action was then brought on January 27, 1983.

The gravamen of the plaintiff's complaint is that the defendant has arbitrarily and capriciously refused to pay him the disability retirement benefits to which he is entitled under the Pension Plan. Instead of bringing his action under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, for breach of the collective bargaining agreement, the plaintiff seeks relief under the Employment Retirement Income Security Act (ERISA), 29 U.S.C. 1132(a)(1)(B), which states: "A civil action may be brought ... by a participant or beneficiary ... to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan ....")

The defendant contends that the plaintiff's suit is barred for the reason that the decision of the Medical Board is a decision made pursuant to binding arbitration and therefore is *res judicata* of the plaintiff's entire claim. The plaintiff counters this argument by stating that ERISA provides him with a statutory cause of action that cannot be foreclosed because of an arbitration decision on the same issue.

The issue critical to the resolution of this case is a legal one: what effect does an arbitration decision have upon an individual

employee's pension claim brought in an action under ERISA? In other words, when an employee is denied benefits under his company pension plan and that denial is upheld pursuant to binding arbitration provisions in the plan and the collective bargaining agreement, must the district court in the employee's ERISA suit relitigate the entire matter *de novo,* uphold the arbitration decision unless arbitrary and capricious, or treat the arbitration decision as *res judicata* of the issue?

■ It appears that the law has become well settled that, before an employee may assert a judicial cause of action under ERISA, he must first exhaust all administrative procedures outlined in his pension plan, subject only to well recognized exceptions to the exhaustion doctrine. *Kross v. Western Electric Co.,* 701 F.2d 1238, 1243–45 (7th Cir.1983); *Amato v. Bernard,* 618 F.2d 559, 566–68 (9th Cir.1980); *Scheider v. United States Steel Corp.,* 486 F.Supp. 211 (W.D. Pa.1980); *Taylor v. Bakery & Confectionary Union & Industry International Welfare Fund,* 455 F.Supp. 816 (E.D.N.C.1978).

The essential rationale for holding that administrative procedures must be exhausted before an ERISA suit can be brought in Federal court incorporates the legislative history of ERISA, congressional intent, the requirements outlined in ERISA itself, and important policy considerations. The following from the *Amato* decision, 618 F.2d at 566–568 (footnotes omitted), summarizes the rationale:

It is true that the text of ERISA nowhere mentions the exhaustion doctrine. The question therefore may be raised as to whether Congress intended to grant the authority to the courts to apply that doctrine in suits arising under ERISA. Like Judge Dupree in *Taylor v. Bakery and Confectionary Union and Industry International Welfare Fund,* 455 F.Supp. 816 (E.D.N.C.1978), we conclude from both the legislative history and the text of ERISA that Congress did intend to grant such authority to the courts, and that sound policy requires the application of the exhaustion doctrine in suits under the Act.

We note first that in enacting ERISA, Congress "intended that a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans." 120 Cong.Rec. 29942 (1974) (remarks of Senator Javits). Second, the legislative history of ERISA forges an explicit link between suits under ERISA and suits under section 301 of the LMRA. House Conf.Rep. No. 93–1280, the Joint Explanatory Statement of the Committee of Conference on ERISA, reprinted in [1974] U.S.Code Cong. & Admin.News, pp. 5038, 5107, says that all actions under ERISA to enforce benefit rights under a covered plan or to recover benefits under the plan, whether brought in federal or state courts, "are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947." But the federal courts have long fashioned federal common law under § 301 of the LMRA, see *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); and part of that law has been that where administrative remedies are available they must usually be exhausted by an aggrieved party before his § 301 complaint will be heard, see e.g., *Buzzard v. Local Lodge 1040 Int'l Ass'n of Mach. and Aero. Wkrs.,* 480 F.2d 35 (9th Cir.1973). The legislative history of ERISA thus clearly suggests that Congress intended to grant authority to the courts to apply the exhaustion requirement in suits arising under the Act.

Third, ERISA itself requires covered benefit plans to provide administrative remedies for persons whose claims for benefits have been denied. Section 503, 29 U.S.C. § 1133. It also permits the Secretary of Labor to prescribe regulations governing such administrative remedies, Section 505, 29 U.S.C. § 1135; and the Secretary has done so, 29 C.F.R. § 2560.503–1. As Judge Dupree notes in *Taylor, supra,* the institution of such ad-

ministrative claim-resolution procedures was apparently intended by Congress to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned. It would certainly be anomalous if the same good reasons that presumably led Congress and the Secretary to require covered plans to provide administrative remedies for aggrieved claimants did not lead the courts to see that those remedies are regularly used. Moreover, the trustees of covered benefit plans are granted broad fiduciary rights and responsibilities under ERISA, sections 401 through 414, 29 U.S.C. §§ 1101–1114, and implementation of the exhaustion requirement will enhance their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes. The text of ERISA and the policies underlying that text, far from suggesting that Congress intended to abrogate the exhaustion requirement in the case of suits under ERISA or that sound policy would counsel its abrogation by the courts, suggest just the opposite.

Finally, a primary reason for the exhaustion requirement, here as elsewhere, is that prior fully considered actions by pension plan trustees interpreting their plans and perhaps also further refining and defining the problem in given cases, may well assist the courts when they are called upon to resolve the controversies. *Cf. Buzzard v. Local Lodge 1040 Int. Ass'n of Mach. & Aero. Wkrs., supra,* 480 F.2d at 41.

In sum, we conclude that the federal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and that as a matter of sound policy they should usually do so.

The case of *Sample v. Monsanto Co.,* 485 F.Supp. 1018 (E.D.Mo.1980), is also of particular interest with respect to both the exhaustion requirement and the delegation of the fiduciary duty of the pension plan trustee to review a denial of the employee's claim. In that case the defendant refused to grant the plaintiff's claim for total and permanent disability benefits under the pension plan. The plaintiff brought suit under ERISA and the defendant moved for summary judgment on the ground that the plaintiff had not exhausted the claim procedures under the plan.

The pension plan in *Sample* provided for medical arbitration where the employee's claim was denied. This was accomplished by the employee and the company jointly selecting an independent physician who would make a determination of the plaintiff's eligibility for pension benefits. The court held that the plaintiff had to exhaust the medical arbitration procedure before he could maintain his action under ERISA and granted summary judgment for the defendant.

In reaching its decision, the court in *Sample* held that "medical arbitration procedures are a reasonable delegation of defendant's fiduciary duties under the plan." 485 F.Supp. at 1019. *See also Lucas v. Warner & Swasey Co.,* 475 F.Supp. 1071 (E.D.Pa.1979) (holding that fiduciary's duty could be delegated to an administrative committee). The *Sample* court went on to state:

> The broad managerial discretion granted trustees under ERISA indicates a congressional intent that they be primarily responsible for establishing and operating claims procedures under employee benefit plans. The federal courts generally limit their review of disputed claims and intervene only where trustees have acted arbitrarily or capriciously.

> Applying this standard, the Court finds that the medical arbitration procedures provide a fair mechanism for resolving beneficiary disputes in recognition of the medical expertise required to determine the nature and extent of a claimed disability.

*Sample,* 485 F.Supp. at 1019 (citations omitted).

Although the court reviewed under the arbitrary and capricious standard the trustee's delegation of his authority to review pension claims, it did not indicate how it would review the decision of the medical arbitrator himself were that issue before it.

The *Sample* court's decision is also supported by the regulations promulgated pursuant to ERISA. A pension plan established and maintained pursuant to a collective bargaining agreement will be deemed to comply with the required claims procedures outlined in the regulations:

> ... [I]f the collective bargaining agreement pursuant to which the plan is established or maintained sets forth or incorporates by specific reference.
>
> (A) Provisions concerning the filing of benefit claims and the initial disposition of benefit claims, and
>
> (B) *A grievance and arbitration procedure to which denied claims are subject.*
>
> (ii) Such plan will be deemed to comply with the provisions of paragraphs (g) and (h) of this section (but will not be deemed to comply with paragraphs (d) through (f) if the collective bargaining agreement pursuant to which the plan is established or maintained sets forth or incorporates by specific reference a grievance and arbitration procedure to which denied claims are subject (but not provisions concerning the final and initial disposition of benefit claims).

29 C.F.R. § 2560.503–1(b) (1983) (emphasis added). Clearly, with respect to resolving individual pension claims, the use of grievance and arbitration procedures is acceptable under ERISA.

■ Having established that exhaustion of administrative procedures, including arbitration, is required before an employee may commence his ERISA suit in federal court, the next question is how should the federal court treat the decisions rendered by those responsible for resolving the employee's claim at the administrative level. Common sense dictates that if exhaustion of administrative procedures is required, then the decisions rendered in those procedures must in some way be taken into account by the court in reaching its decision on the ERISA claim. Therefore, this Court rejects any view that it would be required to review *de novo* the ERISA claim before it. To do so would defeat any purpose to be served by the administrative procedures set out under the pension plan.

Where an employee is denied benefits under his pension plan and the decision is made by the pension plan trustee, the parties concede that the law is well settled with respect to the proper standard of review. The decision of the trustees of the pension plan with respect to the claim of an individual employee must be sustained by the court in the employee's ERISA action unless the trustee's decision was arbitrary and capricious. *In re Vorpahl,* 695 F.2d 318 (8th Cir.1982); *Morgan v. Mullins,* 643 F.2d 1320 (8th Cir.1981); *Wardle v. Central States, Southeast and Southwest Areas Pension Fund,* 627 F.2d 820 (7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *Calamia v. Spivey,* 632 F.2d 1235 (5th Cir.1980).

It is equally well settled that, with respect to the review of arbitration awards by the federal courts, the standard of review is that set forth by the United States Supreme Court in *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), one of the cases in the well-known *Steelworkers Trilogy.* Holding that "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards," the Court found that an arbitrator's award will be upheld by the federal courts *"so long as it draws its essence from the collective bargaining agreement."* 363 U.S. at 596–97, 80 S.Ct. at 1360–61. (emphasis added.)

■ Under ERISA, 29 U.S.C. § 1133(1, 2), it is required that every employee benefit plan:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific

reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

As was pointed out earlier in the *Sample* case and in the ERISA regulations, arbitration procedures are a reasonable delegation of the fiduciary's duty. Therefore, the resolution of the principal issue presented in the instant case would appear to depend on the exact procedure by which the final decision of the employee's pension claim is rendered.

There are essentially three methods by which individual pension claims might be resolved at the administrative level. First, the fiduciary or his designee could make the decision upon review of the record before him or after conducting his own hearing. Second, the disputed claim could be resolved through some form of arbitration that is not binding. Third, the disputed claim could be resolved through a form of binding arbitration that is agreed to in advance by the contracting parties; employs a neutral decision-maker, and affords the employee a full and fair opportunity to present his case.

In the first two situations, the law seems clear that the ultimate administrative decision on the claim should be upheld unless arbitrary and capricious. In the latter situation, general principles of law would require that the arbitrator's decision on the claim should be given *res judicata* effect as long as his decision draws its essence from the contract. The bottom line here is that in the first two situations the court can make a limited review of the merits of the plaintiff's claim in order to determine if the administrative decision has a rational basis. In the latter situation, however, the court is precluded from any review of the merits and must confine itself to determining if the arbitrator's decision was one that the contract authorized him to make and if the proceeding before the arbitrator was fair and regular on its face.

In the case before this Court, the final decision on the pension claim at the administrative level was the result of binding arbitration. Therefore, the Court concludes that because this individual claim, based on the denial of a pension benefit, is brought under ERISA after it had already been subject to a binding arbitration decision, the Court must give the arbitrator's decision *res judicata* effect as long as the arbitrator's decision drew its essence from the contract.

In the instant case, the Medical Board's final decision on the plaintiff's pension claim was expressly stated in the pension plan, and by incorporation in the collective bargaining agreement, to be "final and binding upon the Company, the Union and the Employee." It is clear that all parties intended that a decision regarding an individual pension claim be treated as a subject for binding arbitration before a neutral decision-maker, with the employee having a full and fair opportunity to present his claim. Because the final decision rendered by the Medical Board was the product of binding arbitration, the standard of review generally applicable for judicial review of arbitration decisions should be followed.

In the case of *Wilson v. Fischer & Porter Company Pension Plan,* 551 F.Supp. 593 (E.D.Pa.1982), the employee's claim that her total years of employment with the company was undercalculated was rejected by the Administrative Committee of the Plan (the trustee's designee for claim resolution). The employee did not grieve her individual claim, but her union filed a class action grievance on the very issue raised by her claim, which concerned the proper method for calculating years of employment. The issue went to binding arbitration where the arbitrator held for the company, effectively, but not expressly, determining the outcome of Ms. Wilson's claim. Nevertheless, she brought suit under ERISA alleging that a breach of fiduciary duty by the pension plan trustee and arguing that any agreement to subject such a claim to arbitration is illegal. The court held otherwise.

Relying on the case of *Adams v. Gould, Inc.,* 687 F.2d 27 (3d Cir.1982), *cert. denied,*

—— U.S. ——, 103 S.Ct. 1777, 76 L.Ed.2d 348, the *Wilson* court found that the case before it was *res judicata* because the issue had been made part of the collective bargaining agreement and was barred by the arbitration decision. The court went on to state:

> Further, although plaintiff claims to assert her rights under ERISA, the gravamen of her complaint is the interpretation of the Plan and the collective bargaining agreement. Her dissatisfaction with the results of the arbitration before an impartial arbitrator does not give her cause to adjudicate the matter *de novo* before this court.

*Wilson,* 551 F.Supp. at 595.

■ The plaintiff raises two principal arguments in response to the motion for summary judgment. First he agrees that the proper standard of review for a trustee's decision denying pension benefits is whether it was arbitrary and capricious. Nevertheless, he contends that the decision denying his benefits was arbitrary and capricious for the reason that when he sought to return to his old job in April of 1980, Reynolds claimed he was totally disabled, but when he then filed for permanent disability the Company took the posture that he was capable of returning to work. This inconsistency, he claims, shows the arbitrariness of the denial of his pension claim.

The court has examined the records submitted in conjunction with this motion and finds nothing to support the plaintiff's argument. Assuming *arguendo* that an arbitrary and capricious standard applies in the instant case, the record is clear that when the plaintiff sought to return to work in April of 1980, Reynolds contested his return on the ground that he was unable to do his former work. The physicians who examined him on behalf of Reynolds found that, although he did not have the physical capacity to return to his former job, he did have the ability to perform light or sedentary work. It is also clear that the arbitrator expressly held that the only issue before him was whether the plaintiff could return to his former job and that other job placements were beyond the scope of the issue presented to him, as well as any issue of permanent disability which he found had not been "claimed or proved." *Reynolds Metals v. United Steelworkers of America, Local Union No. 333,* p. 12 (1981) (Cole, Arb.).

Instead of requesting to return to work in some other classification following the arbitrator's decision, the plaintiff immediately filed a claim for permanent disability. If there is any "inconsistency" in the handling of the plaintiff's case, it appears to lie with him. Clearly, the physicians hired by the Company to examine him found that he could return to some type of work and, in processing his claim for permanent disability, Reynolds would have acted arbitrary if it had *not* taken the posture that the plaintiff was capable of doing one of three specific jobs as determined by an evaluation of his condition. Considering all the records submitted by the parties, there is no evidence whatsoever that the denial of the plaintiff's pension benefits was arbitrary and capricious.

■ The plaintiff's second argument in response to the motion for summary judgment concerns the deference to be given the decision of the Medical Board. The plaintiff contends that ERISA gives him a private cause of action that cannot be foreclosed in federal court because the same issue in his judicial suit was resolved in binding arbitration. Relying on *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), and *Robbins v. Prosser's Moving and Storage Co.,* 700 F.2d 433 (8th Cir.1983) (*en banc*), he would have this court hold that ERISA claims can be litigated *de novo* in court much the same as Title VII claims, irrespective of the fact that the same issues were the subject of binding arbitration. The Court finds the plaintiff's arguments unpersuasive.

In *Alexander v. Gardner-Denver* the Supreme Court held that an employee could pursue his remedy for employment discrimination both under the grievance-arbitration procedure and under Title VII, with the federal court to consider the employee's claim *de novo.* Without detailing the underlying rationale of the Court, the principal reason for its holding was that:

**490**

In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress.

*Id.* at 49–50, 94 S.Ct. at 1020 (emphasis added).

When an employee brings a suit under ERISA with respect to § 1132(a)(1)(B), he is seeking to remedy alleged violations of rights accorded him under the *terms of a benefit plan.* Congress did not accord him any right to receive retirement or disability benefits, but simply allowed him to bring a civil action to enforce *already existing contractual rights,* much in the way other collective bargaining rights can be judicially enforced under § 301 of LMRA. On the other hand, some provisions of ERISA itself create rights that may not exist under a collective bargaining agreement. *Compare Robbins v. Prosser's Moving and Storage Co.,* 700 F.2d 433 (8th Cir.1983) (certain actions brought by pension plan trustees are not required to be arbitrated before a civil action under ERISA is commenced) *with Kross v. Western Electric Co.,* 701 F.2d 1238 (7th Cir.1983) (violations of ERISA itself are required to be arbitrated if the collective bargaining agreement so provides).

This Court concludes that a civil suit brought under ERISA for the purpose of vindicating an individual right created by a pension plan or collective bargaining agreement is not a claim which requires *de novo* consideration as would a claim brought under Title VII, but is instead similar to a suit brought under § 301 of LMRA and therefore must be treated as such with respect to the treatment of an arbitration decision already rendered on issues presented to the Court.

The *Robbins* case cited by the plaintiff is not inapposite of this rule, and actually supports it. In that case it was the *trustees* of a pension plan who sued under ERISA, § 1132(a)(3), as third-party beneficiaries to a collective bargaining agreement between the employer and the union. The trustees

sued the employer to collect certain contributions due the pension funds. The court held that the trustees did not have to submit their claims to arbitration under the contract before proceeding to federal court under ERISA, thereby disagreeing with the position taken by the Seventh Circuit in the *Kross* case.

In reaching its decision, the *Robbins* court relied principally on the fact that the trustees had no right to invoke the arbitration machinery under the collective bargaining agreement, but had to depend on the union to do so when the employer did not follow through with its required contributions. And, as the court stated, "[t]he union's and the funds' interests will not always be in harmony." *Robbins,* 700 F.2d at 442. The court also emphasized the narrowness of its holding:

If the agreements in the cases before us provided in express words that trustees' claims could not come to court before questions of contract interpretation had been settled by arbitration, this would be quite a different case.

\* \* \* \* \* \*

Nor need we decide in the cases before us how to accommodate the judicial and arbitral processes and their results if both are invoked with respect to the same pension or welfare claim. We hold only that the trustees may come into court without first getting the union to invoke the machinery of arbitration.

*Id.* at 442–43 (footnote omitted). Clearly the case before this Court is one in which the "express words" of the contract require resolution of benefit claims by arbitration.

Having concluded that the Medical Board's decision must be treated as any other arbitration award made pursuant to a collective bargaining agreement, the Court's review of the Board's decision is limited to the question of whether it draws its essence from the Pension Plan and, by incorporation, the collective bargaining agreement. In applying this standard of review, the Court is mindful that it has "no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether

there is particular language in the written instrument which will support the claim." *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960) (footnote omitted). The plaintiff cannot relitigate the Board's decision "absent a showing of fraud, misrepresentation, bad faith, dishonesty of purpose, or such gross mistake or inaction as to imply bad faith on the part of the Union or the employer." *Balowski v. International Union,* 372 F.2d 829, 833 (6th Cir.1967). Finally, the Board's decision must be upheld "unless it can be said with positive assurance that the contract is not susceptible of the arbitrator's interpretation." *International Broth. of Elect. Wkrs. v. Prof. Hole,* 574 F.2d 497, 503 (10th Cir.1978).

Applying the various phrasings of the general standard, the Court finds that the Board's decision must be upheld. There is no dispute that the proper procedures provided under the Pension Plan were followed in selecting the physicians to serve on the Board. The Plan provision which the Board interpreted, Section III(3), reads in pertinent part as follows:

> Definition of "Permanently Incapacitated"—An Employee shall be deemed to be permanently incapacitated (as the term "permanently incapacitated" is used herein) and shall be retired as provided in Section III, paragraph (2) above only (a) if he or she has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any bargaining unit occupation at the Employee's location and is not otherwise employed by the Company, and (b) after such total disability shall have continued for a period of five (5) consecutive months, and in the opinion of a qualified physician it will be permanent and continuous during the remainder of the Employee's life, and provided . . . .

The plaintiff has presented no evidence or argument that the physicians, particularly the neutral physician, evaluating his claim and ruling him ineligible for permanent disability did so fraudulently, with bad faith, dishonestly or in gross error. He has likewise failed to show that this Plan provision was not susceptible to the Board's in-

terpretation. (See plaintiff's arbitrary and capricious argument *supra.*) What is clear, however, is that the Pension Plan had a specific provision concerning permanent disability and that the Board made its decision pursuant to the terms of that provision. Whether the majority of the Board was right or wrong in its interpretation of that Plan provision in the plaintiff's case is not subject to review by this Court.

Therefore the issue before this Court being *res judicata,* the Court finds that the plaintiff is barred from adjudicating the issue presented and is bound by the determination of the Medical Board. The Court notes that the plaintiff has elected to abandon his state law claim in Count II of his complaint and, there being no material issue of fact remaining in this case, the defendant is entitled to judgment as a matter of law.

It is therefore Ordered that the defendant's motion for summary judgment be, and it is hereby, granted.