Michael R. AMATO, Plaintiff-Appellant,

v.

J. W. BERNARD; Warren Driver; C. V. Holder; Roy Silver; John Kuhl; Paul Miller, Rex Bowlby, Sam Heil, Gerald Stedman, J. W. Wood, Individually and as Trustees, Carpenters Pension Trust for Southern California; Vivian Ciervo; Roger Lopez, Defendants-Appellees.

No. 78–1931.

United States Court of Appeals, Ninth Circuit.

May 8, 1980.

Edward J. Howell, Los Angeles, Cal., for plaintiff-appellant.

James P. Watson, Cox, Castle & Nicholson, Los Angeles, Cal., for defendants-appellees.

Before WALLACE and TANG, Circuit Judges, and HANSON,* Senior District Judge.

HANSON, Senior District Judge.

The appellant, Michael R. Amato, brought this suit against the trustees and two employees of the Carpenters Pension Trust for Southern California (the Trust) on July 13, 1977. The amended complaint states two causes of action. The first, which seeks a declaration of the parties' rights and duties under the Trust's Pension Plan, alleges that Amato is entitled to a full pension from the Trust, and that although he has applied for this pension "on numerous occasions prior to filing the complaint . . . on each occasion he has been denied." Federal jurisdiction of this first claim is predicated on 29 U.S.C. § 1132(a), the civil enforcement provision of the Employee Retirement Income Security Act of 1974 (ERISA or the Act), 29 U.S.C. § 1001 *et seq.* The second cause of action seeks money damages for defendants' alleged bad faith in their dealings with Amato; federal jurisdiction here is claimed under the doctrine of pendent jurisdiction.

The defendants moved for summary judgment as to the first cause of action and to dismiss the second. These motions were both granted by the district court and judgment was entered accordingly. As to the first cause of action, the court held that Amato has made only one proper application for pension benefits, which was finally denied in November 1972; that jurisdiction under ERISA is not available to review actions by the trust finalized prior to September 2, 1974, the effective date of the Act; and that

[i]f plaintiff claims [as he does] that *new* facts and circumstances not heretofore presented to the Board of Trustees in 1971–1972 now entitle him to further consideration of his request for a pension, he

---

* The Honorable William C. Hanson, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

is obligated to exhaust the administrative procedures set for[th] in the Pension Plan before seeking judicial relief. He has not done so, and this action is therefore premature.

*Amato v. Bernard,* No. CV 77–2583–RJK (C.D.Cal., filed February 1, 1978). The district court dismissed the second cause of action on the ground that absent the first, no basis existed for the assertion of pendent jurisdiction over the second claim.

The issues raised in this appeal all have to do with whether Amato has ever obtained a final decision from the Trust that is reviewable under ERISA, or whether he should be required to do so before seeking relief under that Act. We affirm the district court.

### I. *Facts.*

The Trust was formed pursuant to the provisions of section 302(c) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186(c), under a collective bargaining agreement between the United Brotherhood of Carpenters and Joiners of America (the Union) and several employers' associations for their contractor-members. The Trust's Pension Plan was amended in 1976 to bring it into compliance with ERISA. Some aspects of the Trust and its operations were discussed in this Court's opinion in *N. L. R. B. v. United Brotherhood of Carpenters & Joiners of America, Local # 1913, AFL–CIO,* 531 F.2d 424 (9th Cir. 1976); others will be mentioned *infra.* We note here that at all relevant times the Plan has spelled out in some detail procedures to be followed by claimants both in applying for benefits and in appealing to the Trustees any initial denial of such applications. The relevant provisions of the 1976 version of the Plan are set out in the margin.[1]

Amato worked in Connecticut and New Jersey from 1947 to 1955. He was a member of the Union throughout that period. In 1955 he moved to California, joined Local 1913 of the Union and worked until 1969. He first applied for pension benefits in

---

1. Art. VIII. Section 4 of the 1976 version of the Plan provides in part:

Section 4. Determination of Disputes.

(a) No Employee, Participant, eligible dependent or other person shall [have] any right or claim to benefits under the Trust and Plan other than as specified herein. If any person shall have a dispute with the Board of Trustees as to the eligibility, type, amount or duration of such benefits, the dispute shall be resolved by the Board of Trustees under and pursuant to the Trust and Plan and its decision shall be final and binding upon all parties.

(b) Any person whose application for benefits under the Trust or the Plan has been denied in whole or in part by the Board of Trustees, or whose claim to benefits is otherwise denied by the Board of Trustees, shall be notified of such decision in writing by the Board of Trustees and may petition the Board of Trustees to reconsider its decision. A petition for reconsideration shall be in writing, shall state in clear and concise terms the reason or reasons for disagreement with the decision of the Board of Trustees, and shall be filed with or received by the Administrative Office within sixty days after the date shown on the notice to the petitioner of the decision of the Board of Trustees.

Upon good cause shown, the Board of Trustees may permit the petition to be amended or supplemented. The failure to file a petition for reconsideration within such sixty day period shall constitute a waiver of the claimant's right to reconsideration of the decision. Such failure shall not, however, preclude the applicant or claimant from establishing his entitlement at a later date based on additional information and evidence which was not available to him at the time of the decision of the Board of Trustees.

Upon receipt of a petition for reconsideration, a Committee appointed by the Board of Trustees and authorized to act on such petitions, shall grant a hearing on the petition and receive and hear any evidence or argument which cannot be presented satisfactorily by correspondence. A decision by the Committee shall be made promptly unless special circumstances require an extension of time for processing, in which case a decision shall be rendered as soon as possible, but not later than 120 days after receipt of the request for review. The petitioner shall be advised of the decision of the Committee in writing.

(c) The decision of the Committee with respect to petition for reconsideration shall be final and binding upon all parties, including the petitioner and any other person claiming under the petitioner. The provisions of this Section shall apply to and include any and every claim or right asserted under the Trust or the Plan, or against the Fund, regardless of the basis asserted for the claim and when the act or omission upon which the claim is based occurred.

April 1971. According to the calculations made by the Trust in 1971 in connection with the disposition of that application, Amato had accumulated only seven and one-half years of service credits under the terms of the Trust's Pension Plan by the time he stopped working in 1969.[2] The Trust has at all relevant times required a minimum of ten years of credited service in order to qualify for any kind of a pension other than a disability pension. Amato has never applied for a disability pension.

The complicating factor in this case is that Amato did not *voluntarily* stop working in 1969. Rather, in April of that year he got into a dispute with his Local, which resulted in his being fined and suspended by the Local in June 1969 and in his bringing unfair labor practices charges against the Local and others later in the same year. The protracted unfair labor practices litigation proceeded in two stages: (1) Amato won a favorable trial examiner's ruling against the Local on August 21, 1970, which was adopted by the NLRB, 189 NLRB 521 (1971), and enforced by this Court, 464 F.2d 1395 (9th Cir. 1972). The Trust was not a party to this phase of the litigation. (2) In a supplemental proceeding initiated in 1973 to determine the amount of·back pay owed by the Local to Amato, an administrative law judge (ALJ) recommended on April 26, 1974 that the Local be required to pay $12,088.34 (plus interest) to Amato and $1,147.30 (plus interest) to the Trust to be credited to Amato's pension account. This recommendation was in essence affirmed by the NLRB, 213 NLRB 363 (1974), and enforced by this Court, 531 F.2d 424 (1976). The Trust and its trustees intervened in this second phase of the litigation and were subject to the enforced order of the NLRB to accept payment of the amount awarded to Amato for credit to his pension account, and to administer that account as though the payments had been made by an employ-er-contributor. The amounts paid to Amato and the Trust as a result of these decisions were based on the ALJ's finding that the Local's unfair labor practices had caused Amato to lose 553 hours of work in 1969 and 1405 hours in 1970. When the Trust recalculated Amato's service credits in 1976 on the basis of these "late reported hours," it concluded that Amato had accumulated nine years of credited service through 1970.

As noted, Amato first applied for pension benefits in April 1971, while the unfair labor practices litigation was in its first stage. This application was initially denied on June 7, 1971, on the ground that Amato did not have enough service credits to qualify for a pension. The letter notifying Amato of the denial of his application called his attention to his right to appeal the decision administratively, and to the fact that even if he failed to do so he would not be precluded "from filing a new application at a later date based on additional information and evidence not currently available to you, provided that the same does not involve a period earlier than three years from the date of the application."

Over the next year and a half there was an extensive correspondence between Amato and the Trust, and at least one meeting between Amato and his lawyer and representatives of the Trust. Two features of this extended interaction stand out. First, as to the merits of his claim for a pension, Amato consistently argued that the Trust should give him additional credits for the time he had been out of work because of his Local's discrimination against him; and the Trust as consistently took the view that the unfair labor practices litigation, which was then in its first stage, had no bearing on the merits of the pension application. However, Amato never asked the Trust to delay its decision on his application until such time as it should be finally determined

---

**2.** Amato was given no credit for the years he had worked in Connecticut and New Jersey because, even though he had been a Union member during those years, "The Carpenters Pension Trust for Southern California does not have reciprocity with either one of these states and therefore we cannot establish credit on those periods of employment." According to the Trust's calculations, Amato did not work enough hours in covered employment to gain full years of credit in any of 1959 through 1969.

what the Local would have to do to make him whole. That question of course was not finally settled until the 1976 decision of this Court. Second, Amato was given every possible opportunity to argue his claim before the Trust. He challenged the initial denial of his application in a letter dated August 23, 1971. This letter was reviewed by the Board of Trustees on October 27, 1971, and the Board affirmed the initial denial. Amato continued to contest the decision, and indicated his desire to appear before the Trustees himself. He was scheduled to appear "with the representatives of your choice" before the Trust's Appeals Committee on February 29, 1972, the proceedings to be "reported by an official court reporter, and the recommendations of the Appeals Committee [to] be submitted to the full Board of Trustees for final action." However, this appearance was postponed by mutual agreement pending the outcome of informal discussions between Amato and his lawyer and representatives of the Trust. These discussions bore no fruit; and Amato was again scheduled to appear before the Appeals Committee, this time on August 15, 1972. He failed to appear, and the Committee postponed consideration of his case. Several more letters were exchanged, to no avail. Finally, at its meeting of November 27, 1972, the Committee passed on Amato's appeal, upholding the earlier decision to deny his pension application. The minutes of that meeting indicate that:

> Co-Counsel [for the Trust] reviewed Mr. Amato's claim that he was discriminated against in getting work out of the Union hiring hall and should therefore receive Pension Credits for the time in question. He reported on receipt of correspondence indicating that Mr. Amato prevailed in unfair labor practices charges which he filed with the National Labor Relations Board against the Union, and *the Union* is being required to "make whole" on this man. [Emphasis added.]

The record discloses only sporadic correspondence between Amato and the Trust between November 27, 1972 and June 30, 1976.[3] This was of course the period of the second phase of the unfair labor practices litigation, to which the Trust was a party. The decision of this Court enforcing the supplemental order of the NLRB was handed down on February 12, 1976.

On June 30, 1976, Amato's lawyer wrote to the Trust asking that he be provided with "a summary of Mr. Amato's credits, including a detailed listing as to when each of the credits was earned. In addition, please provide us with the summary of all pension benefits to which these credits entitle Mr. Amato." The Trust replied by letter on July 16, 1976. Enclosed with the letter was a "pension analysis" indicating that even with the late reported credits accrued as a result of the February 12 decision of this Court, Amato had accumulated a total of only nine years of credited service, and that he had in any case suffered a "break in employment" since 1970.[4] The letter advised Amato's lawyer that "Mr. Amato is not eligible for a pension benefit at this time because of insufficient Pension Credits due to his Break in Covered Employment." There followed, over the next two months, several further exchanges of letters between Amato's lawyer and various representatives of the Trust. Amato's lawyer asserted that Amato was entitled to a pension and demanded that payments begin, and on one occasion suggested a conference between himself and the Trust's lawyer to make "an effort to eliminate litigation concerning this case." The representatives of the Trust, on the other hand, main-

---

**3.** The two letters from that period that are in the record both deal with the question of credit for Amato's years of work in Connecticut and New Jersey.

**4.** The letter of July 16, 1976 indicated that the pre-1976 version of the Pension Plan would be applied to Amato. Art. IV, Section 7(a)(2) of that version of the Plan provides that:

> (2) After January 1, 1963, it shall be considered a break in employment and an Employee's previously accumulated Pension Credit shall be cancelled if he fails to earn at least one quarter of Future Service Credit in any period of three consecutive calendar years.

tained that Amato was not entitled to a pension, and referred Amato to the dispute resolution procedures spelled out in the Pension Plan itself. The last letter in this series, from the Trust's lawyer to Amato's, pointed out that

> the Plan contains provisions which, in effect, specify that in the event of any dispute concerning the interpretation or application of the Plan the claimant is obliged to submit that dispute to a Committee of the Trustees for consideration and decision. It is our client's position that these provisions must be exhausted before Court litigation may be properly instituted, and not then unless it can be alleged and proved that the Trustees have acted fraudulently, capriciously or in bad faith with respect to the claimant.

Rather than pursuing his administrative remedies any further, however, Amato filed this suit in July 1977, with the result that has already been recounted.

## II. *The 1971 Application.*

■ The first question raised by Amato in this appeal is whether the district court was correct in holding that it had no jurisdiction to review the Trust's denial of his 1971 application for pension benefits.

Amato rightly does not argue that the district court erred in holding that jurisdiction under ERISA is not available to review actions by the Trust finalized prior to the effective date of the Act. Although this Court has never ruled on the issue, those that have done so have unanimously agreed with the district court. *See, e. g., Malone v. White Motor Corp.,* 435 U.S. 497, 499 n.1, 98 S.Ct. 1185, 1187, 55 L.Ed.2d 443 (1978).

What Amato does argue is that the district court erred in holding that his 1971 application was "finally rejected" by the Trust in November 1972 and that "all rele-

vant acts in connection therewith took place prior to the effective date of the Act." Although Amato purports to point to genuine issues of material fact on this issue that would make the district court's grant of summary judgment improper, it is clear that no such facts are in dispute. Rather, Amato's argument is simply that because of the unfair labor practices litigation that was going on during 1971 and 1972, the Trust somehow could not have effectively denied his 1971 application in 1972, but that "the effective date of denial of his claim, and therefore the only date relevant to the filing of the subject lawsuit . . . is February 12, 1976," the date of this Court's final disposition of the unfair labor practices litigation.

We find no merit in this argument. It appears to be based, for one thing, on the assumption that the Trust was a party to the unfair practices litigation during 1971 and 1972, while Amato's first application was being considered.[5] As we have seen, however, this assumption is mistaken; the Trust did not intervene in that litigation until its second phase, which began in 1973. Furthermore, the Trust's position throughout its consideration of the 1971 application was that the unfair labor practices litigation had no bearing on Amato's right to a pension. Amato did not ask the Trust to delay its consideration of his application until that litigation came to an end. He clearly exhausted the administrative appeals available to him in 1971 and 1972, and the Appeals Committee of the Trust definitively ruled on his application on November 27, 1972, taking the NLRB litigation into account. Finally, as the Pension Plan itself and the June 7, 1971 letter from the Trust to Amato both clearly provided, Amato was not barred from submitting a new application in 1976, based on the additional information and evidence of this Court's 1976

5. "The NLRB case was a culmination of approximately six years of litigation which began in 1970, when Appellant first filed his NLRB suit against the [Local], charging the union with unfair labor practices. Appellees, Carpenters Pension Trust, intervened *in that action* and was ordered by this court to accept pension payments into the fund on behalf of Mr. Amato. Since *litigation was taking place not on Appellant's insistence, but rather on the insistence of Appellees,* certainly no denial of Appellant's pension claim could be effective until such time as this honorable court made its ruling." Appellant's brief at 6–7 (emphasis added).

decision that was not available to him at the time of the November 27, 1972 decision of the Trust. We agree with the district court that this is what he was required to do.

### III. *The 1976 "application."*

■ Amato argues that he did in fact reapply in 1976. He apparently concedes that he submitted no new formal application to the Trust; but he argues that the letter of June 30, 1976 that his lawyer sent to the Trust "was an informal application for pension benefits, and that Appellees processed said letter as a formal application." On the other hand, appellees argue, and the district court held, that "[s]ince the effective date of [ERISA], plaintiff has filed no application with the [Trust] for benefits, although attorneys employed by plaintiff have corresponded informally with the Administrative Office of the [Trust] and attorneys for the [Trust]." Amato argues that this holding of the district court was erroneous.

We decline to rule on the question whether the district court erred in finding that the letter of June 30 was not an application for pension benefits. Even if that letter should be considered to be an application, and even if the Trust's letter of reply of July 16, 1976 should be considered to be an initial denial of the application, it is nevertheless clear that Amato did not pursue his further administrative remedies, as he was required to do by the terms of the Pension Plan and as he was consistently invited to do by various representatives of the Trust. The district court clearly did not err in finding, as it did, that Amato did not exhaust his administrative remedies in 1976. The only remaining question is whether he should be required to do so before bringing suit under ERISA.

### IV. *Exhaustion.*

■ The usual rule in the field of labor law is that where administrative procedures have been instituted for the resolution of disputes between parties to a collectively bargained or other agreement, the courts will generally require the exhaustion of those procedures before exercising the jurisdiction they might otherwise have over disputes subject to resolution through said procedures. As is said in *Winterberger v. General Teamsters Auto Truck Drivers and Helpers Local Union 162*, 558 F.2d 923, 925 (9th Cir. 1977):

> Ordinarily, a court possesses jurisdiction to review an intra-union or similar administrative-like proceeding whether or not the aggrieved party has exhausted administrative remedies. *Verville v. Int. Ass'n of Mach. & Aero Wkrs.*, 520 F.2d 615 (6th Cir. 1975); *Buzzard v. Local Lodge 1040 Int. Ass'n of Mach. & Aero. Wkrs.*, 480 F.2d 35 (9th Cir. 1973). But as a matter of sound policy, courts usually decline to intercede and in most instances act within their discretion in doing so. *NLRB v. Industrial Union of Marine and Shipbuilding Wkrs.*, 391 U.S. 418, 426, 88 S.Ct. 1717, [1722] 20 L.Ed.2d 706 (1968); *Buzzard v. Local Lodge 1040 Int. Ass'n of Mach. & Aero Wkrs.*, supra, 480 F.2d at 41.

Amato appears to argue, however, that the sound policy under which the courts have usually required exhaustion of available administrative remedies before permitting aggrieved parties to proceed with their lawsuits has been abrogated in the special case of ERISA. We cannot agree.

■ It is true that the text of ERISA nowhere mentions the exhaustion doctrine.[6] The question therefore may be raised as to whether Congress intended to grant the authority to the courts to apply that doctrine in suits arising under ERISA. Like Judge Dupree in *Taylor v. Bakery and Con-*

---

**6.** *Compare* Section 101(a)(4) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a)(4): "No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency . . . . : *Provided*, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings . . .."

*fectionary Union and Industry International Welfare Fund,* 455 F.Supp. 816 (E.D.N.C. 1978), we conclude from both the legislative history and the text of ERISA that Congress did intend to grant such authority to the courts, and that sound policy requires the application of the exhaustion doctrine in suits under the Act.

■ We note first that in enacting ERISA, Congress "intended that a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans." 120 Cong.Rec. 29942 (1974) (remarks of Senator Javits). Second, the legislative history of ERISA forges an explicit link between suits under ERISA and suits under section 301 of the LMRA. House Conf.Rep.No.93–1280, the Joint Explanatory Statement of the Committee of Conference on ERISA, reprinted in [1974] U.S.Code Cong. & Admin.News, pp. 5038, 5107, says that all actions under ERISA to enforce benefit rights under a covered plan or to recover benefits under the plan, whether brought in federal or state courts, "are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947." But the federal courts have long fashioned federal common law under § 301 of the LMRA, *see Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); and part of that law has been that where administrative remedies are available they must usually be exhausted by an aggrieved party before his § 301 complaint will be heard, *see, e. g., Buzzard v. Local Lodge 1040 Int'l Ass'n of Mach. and Aero. Wkrs.,* 480 F.2d 35 (9th Cir. 1973). The legislative history of ERISA thus clearly suggests that Congress intended to grant authority to the courts to apply the exhaustion requirement in suits arising under the Act.

■ Third, ERISA itself requires covered benefit plans to provide administrative remedies for persons whose claims for benefits have been denied. Section 503, 29 U.S.C. § 1133.[7] It also permits the Secretary of Labor to prescribe regulations governing such administrative remedies, Section 505, 29 U.S.C. § 1135;[8] and the Secretary has done so, 29 C.F.R. § 2560.503–1. As Judge Dupree notes in *Taylor, supra,* the institution of such administrative claim-resolution procedures was apparently intended by Congress to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned. It would certainly be anomalous if the same good reasons that presumably led Congress and the Secretary to require covered plans to provide administrative remedies for aggrieved claimants did not lead the courts to see that those remedies are regularly used. Moreover, the trustees of covered benefit plans are granted broad fiduciary rights and responsibilities under ERISA, sections 401 through 414, 29 U.S.C. §§ 1101–1114, and implementation of the exhaustion requirement will enhance their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes. The text of ERISA and the policies underlying that text, far from suggesting that Congress intended to abrogate the exhaustion requirement in the case of suits under ERISA or that sound policy would counsel its abrogation by the courts, suggest just the opposite.

---

**7.** 29 U.S.C. § 1133 provides: "In accordance with regulations of the Secretary, every employee benefit plan shall—(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."

**8.** 29 U.S.C. § 1135 provides in pertinent part: "Subject to subchapter II of this chapter and section 1029 of this title, the Secretary may prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this subchapter."

Finally, a primary reason for the exhaustion requirement, here as elsewhere, is that prior fully considered actions by pension plan trustees interpreting their plans and perhaps also further refining and defining the problem in given cases, may well assist the courts when they are called upon to resolve the controversies. *Cf. Buzzard v. Local Lodge 1040 Int. Ass'n of Mach. & Aero. Wkrs., supra,* 480 F.2d at 41.

In sum, we conclude that the federal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and that as a matter of sound policy they should usually do so.[9] Amato has made no cogent argument to the contrary.[10]

## V. Adequacy of the remedy; futility.

■ We recognize of course that despite the usual applicability of the exhaustion requirement,

> there are occasions when a court is obliged to exercise its jurisdiction and is guilty of an abuse of discretion if it does not, the most familiar examples perhaps being when resort to the administrative route is futile or the remedy inadequate.

*Winterberger v. General Teamsters Auto Truck Drivers and Helpers Local Union 162, supra,* 558 F.2d at 925. This however is not such an occasion.

■ Despite Amato's arguments to the contrary, we see no inadequacy in the administrative appeal procedures available under the terms of the Pension Plan here in question to claimants whose applications for benefits have been initially denied. No claim is made that those procedures fail to comply, either in theory or in practice, with the terms of section 503 of ERISA or with the regulations laid down in 29 C.F.R. § 2560.503–1. The procedures are clearly defined in the Plan; they are simple; they are supposed to work quickly and there is no evidence that they do not; they can result in a claimant's receiving all the relief he is entitled to under the Plan; and there is no evidence that they are not accessible to aggrieved claimants in general or to Amato in particular.[11] We find no merit in Amato's suggestion that the procedures are defective because they are not "self-executing." Nor are they inadequate, as Amato claims, because they are not subject to formal rules of procedure or evidence. The Plan clearly provides for hearings by Trust Appeals Committees at which such Committees "shall . . . receive and hear any evidence or argument which cannot be presented satisfactorily by correspondence;" the record in this very case shows that the Trust has permitted aggrieved claimants to go on the record and to be represented by counsel at such hearings. The Trust need

9. *See also Lucas v. Warner & Swasey Co.,* 475 F.Supp. 1071, 1074 (E.D.Pa.1979) (exhaustion of administrative remedies required prior to suit under ERISA); *Morgan v. Laborers Pension Trust Fund For Northern California,* 433 F.Supp. 518 (N.D.Cal.1977) (same).

10. *Lewis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 431 F.Supp. 271 (E.D.Pa.1977), upon which Amato relies for the proposition that the exhaustion requirement has been abrogated in the case of suits under ERISA, is not to the point. *Lewis* involved an agreement by a registered representative of the New York Stock Exchange to arbitrate any dispute between himself and any member or member organization arising out of his employment or termination of employment. Judge Hannum held that such a prospective agreement to arbitrate did not compel the plaintiff to submit his ERISA claims, which included claims that the trustees of the Merrill Lynch Pension Plan had violated their fiduciary responsibilities, to arbitration rather than adjudication in the federal courts. In this case there is no claim that the Trustees have violated the fiduciary responsibilities imposed on them under ERISA. Moreover, as appellees correctly point out, enforcement of a general agreement to arbitrate any dispute would be very different than the requirement imposed in this case, of exhaustion of internal administrative remedies provided by pension trusts as required by ERISA itself. *And see Fox v. Merrill Lynch & Co., Inc.,* 453 F.Supp. 561 (S.D.N.Y.1978), in which an agreement to arbitrate precisely the same as that involved in *Lewis* was enforced as to the plaintiff's claim to pension benefits.

11. The defendants did not, as Amato claims, reject any request of his for an administrative hearing in 1976. The Trust's lawyer declined only to hold an extra-administrative meeting with Amato's lawyer, inviting Amato instead to submit his dispute with the Trust to a Committee of the Trustees as required by the Pension Plan.

do no more. Finally, the appeal procedures are not inadequate simply because they are administered by the Trustees themselves, rather than some "neutral arbitrator." The internal administration of such procedures is the very thing contemplated by section 503 of ERISA, and indeed is typical of the collectively bargained grievance procedures as to which the exhaustion requirement is usually enforced. Nor is there evidence in the record of any personal bias on the part of the Trustees against Amato that would render such internally administered procedures inadequate in this particular case. Amato has simply made no showing of the inadequacy of his administrative remedies.

The record is similarly devoid of evidence that it would be futile for Amato to pursue his claim administratively. Indeed, the only argument Amato makes to show such futility is the one we have just considered and rejected, that his administrative remedies are inadequate.

Finally, we do not believe that remanding Amato to his administrative remedies will, as he claims, penalize him for his unfair labor practices litigation against his Local or undermine the 1976 ruling of this Court awarding him additional pension credits for the years during which he was unable to work because of his Local's discrimination against him. The court will still be open to Amato when he has exhausted his appeals before the Trust and if the decision of the Trustees is adverse to him; any delay is the result simply of his refusal to avail himself of those appeals in 1976 when he was invited to do so by the Trust itself.

## VI.  *Conclusion.*

We have decided no more than that the district court did not err in concluding that it had no jurisdiction to review the Trust's denial of Amato's 1971 application, did not err in finding that Amato had not exhausted his administrative remedies in 1976, and did not abuse its discretion in requiring such exhaustion before hearing Amato's complaint. We express no opinion on the merits of Amato's claim to a pension.

The judgment of the district court is AFFIRMED.