774 F.2d 1165
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ronald L. Winchell, Plaintiff-Appellant, Cross-Appellee,
v.
General Motors Corporation, Defendant-Appellee,
Cross-Appellant (83-1830),
v.
Local 599 and International Union of United Automobile,
Aerospace, Agricultrual Workers of America, UAW,
Defendant-Appellee, Cross-Appellant (83-1870).
 Nos. 83-1819, 83-1830, 83-1870
 United States Court of Appeals, Sixth Circuit.
 9/11/85
 
 E.D.Mich.
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 BEFORE: MILBURN, Circuit Judge; EDWARDS, Senior Circuit Judge; and SILER, District Judge.*
 PER CURIAM.
 
 
 1
 In this action for wrongful discharge and breach of the duty of fair representation, plaintiff appeals the summary judgments in favor of defendants General Motors Corporation ('GMC') and the Local and International Unions ('Union'). GMC and the Union cross-appeal the denial of their motion for dismissal based on plaintiff's refusal to appear for discovery depositions and the district court's dismissal of plaintiff's pendent state law claims without prejudice. For the reasons that follow, we affirm in part, reverse in part and remand.
 
 I.
 
 2
 Plaintiff was hired by GMC in October, 1966. Although he began to suffer mental problems after several years of employment, plaintiff was able to maintain his job with sick leave, hospitalization, medication and changes in work assignments to reduce stress.
 
 
 3
 On Friday, December 16, 1977, plaintiff was processed through the Buick Medical Department in order to be cleared to return to work following surgery for the removal of a piece of metal which was embedded in his hand in an on-the-job accident. During this hiring-in procedure, plaintiff had a confrontation with a male nurse which resulted in an exchange of harsh words. Plaintiff then left GMC's premises.
 
 
 4
 Later that afternoon, GMC's Plant Security received a call from plaintiff's wife who stated that her husband was 'on his way to Buick to kill someone,' and that he was armed with a rifle. Plant Security contacted the Flint, Michigan police who arrived at the parking lot at about the same time as plaintiff. Plaintiff was apprehended and the police confiscated a rifle with a clip containing six 30-calibre cartridges.
 
 
 5
 Plaintiff reported to work on Monday, December 19, 1977, after spending the weekend in jail. He was given a disciplinary interview and informed of his discharge for having a weapon and ammunition in his possession on GMC property.
 
 
 6
 Plaintiff, who has been diagnosed as a paranoid schizophrenic, thereafter filed a grievance seeking to have his discharge set aside and instead be placed on sick leave. Following an unexplained disappearance for some one and one-half years, plaintiff returned to Flint and secured counsel who filed a request for pension benefits on behalf of plaintiff. After various attempts to achieve satisfaction through his Union failed, plaintiff brought this action under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. Sec. 185, for breach of contract against GMC and breach of the duty of fair representation against his Union. Plaintiff also brought a claim against GMC for pension benefits under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1001 et seq. He later amended his complaint to allege pendent claims under Michigan law for infliction of mental distress and for discharge in violation of Michigan public policy.
 
 
 7
 The district court held (1) that plaintiff failed to exhaust his internal union remedies, (2) that the Union did not breach its duty of fair representation as a matter of law, (3) that the section 301 action against GMC could not survive the dismissal of the Union, (4) that the withdrawal of plaintiff's intra-pension plan appeal precluded the ERISA action under the exhaustion of administrative remedies doctrine, (5) that defendants' motion to dismiss as a sanction for plaintiff's refusal to appear for discovery depositions would be denied, and (6) that plaintiff's pendent state law claims would be dismissed without prejudice once the federal claims were dismissed.
 
 II.
 
 8
 As a general proposition, an employee must exhaust his internal union remedies before bringing an action for breach of the duty of fair representation. See Clayton v. International Union, 451 U.S. 679, 101 S. Ct. 2088 (1981); Monroe v. International Union, UAW, 723 F.2d 22, 24 (6th Cir. 1983). However, compliance with this requirement is not absolute; the employee need only attempt to exhaust these remedies. See Clayton, supra, 451 U.S. at 682, 101 S. Ct. at 2091. For example, where an employee abandons his efforts to pursue internal union remedies after twenty-seven months in the 'endless stages of review,' he will not be denied access to the courts for this reason. Ruzicka v. General Motors Corporation, 523 F.2d 306, 312 (6th Cir. 1975), cert. denied, 104 S. Ct. 424 (1983); see also Gray v. International Association of Heat & Frost Insulators and Asbestos Workers, 447 F.2d 1118, 1124 (6th Cir. 1971).
 
 
 9
 In the instant case the district court committed legal error in refusing to consider the 'excuses' offered by plaintiff as to why he had not exhausted the internal union remedies. We also note that this is a question of fact which further precludes summary judgment. See Gray, supra, 447 F.2d at 1124. On remand, in addition to considering this issue in light of Gray and Ruzicka, if it is determined that plaintiff failed to exhaust the union remedies, the court should consider whether exhaustion should nonetheless be excused because the remedies are inadequate or because to pursue them would be futile. See Clayton, supra, 451 U.S. at 689, 101 S. Ct. at 2095, and Monroe, supra, 723 F.2d at 25 (holding UAW's internal appeal procedures adequate in light of plaintiff's failure to come forward with specific facts showing an issue concerning futility).
 
 
 10
 We also believe the district court erred in holding as a matter of law that the Union did not breach its duty of fair representation. Plaintiff has introduced facts showing that although the Union knew or should have known that his aberrant behavior in appearing on GMC's property with a rifle was due to his psychiatric problem, the Union nonetheless grieved his discharge on the basis of frivolous arguments (that plaintiff's purpose was to bring in a doctor's slip, that the gun was not loaded, etc.). Plaintiff also presented evidence that once he prevailed at the first step of the internal union remedy by convincing the Local to back his grievance, and after the Local's attempts on his behalf failed, the International Union refused to support plaintiff or to process the internal union appeal any further. If believed by the trier of facts, this evidence is sufficient to support a finding that the Union breached its duty to plaintiff.[1] See, e.g., Poole v. The Budd Company, 706 F.2d 181, 183-84 (6th Cir. 1983) (union's conduct may be sufficiently arbitrary to establish breach of the duty when it handless grievance in perfunctory manner, with caprice or without rational explanation; inaction implies bad faith).
 
 
 11
 In light of the above holdings, the district court's grant of summary judgment in favor of GMC on plaintiff's breach of contract claim must also be reversed in that the basis for the court's ruling was that the section 301 action against the employer could not survive the dismissal of the Union. Thus, we need not reach plaintiff's arguments that his action against GMC should survive dismissal of the Union.
 
 
 12
 We next turn to the district court's grant of summary judgment in favor of GMC on plaintiff's ERISA claim based on the court's finding that plaintiff failed to exhaust his intra-pension plan remedies. Although GMC denied the application for the reason that plaintiff did not have the requisite six (6) months of absence due to disability, it nonetheless agreed to process the application under a reservation of the right to deny the application on the basis of plaintiff's ineligibility.
 
 
 13
 The first stage of plaintiff's pension review was a claim evaluation conducted by the Plant Medical Director, Dr. MacClellan. Despite the fact that the application clearly showed that plaintiff was claiming a psychiatric disability, Dr. MacClellan reviewed and denied the application for the reason that plaintiff was not totally disabled by 'recent surgery-palm of left hand (removal of small foreign body).'
 
 
 14
 The second stage of plaintiff's pension review was a submission to the Corporate Medical Director, Dr. Prior. Dr. Prior reviewed the claim and concluded that: 'Based on the record here, this patient cannot be considered T&PD as of Dec. 19, 1977.' Dr. Prior explained that he was constrained to deny application because he was instructed to determine if the medical data available as of December 19, 1977, showed a total and permanent disability on December 19, 1977, and into the foreseeable future. App. at 278. Plaintiff asserts that, accordingly, the great wealth of medical data amassed after plaintiff's discharge was not even considered by Dr. Prior in making his determination.
 
 
 15
 On July 21, 1981, plaintiff's pension was officially denied. The decision gave neither the reason specified by Dr. MacClellan nor by Dr. Prior but, instead, formally denied the pension for the reason that plaintiff had not been disabled for six (6) months before he was discharged in December of 1977.
 
 
 16
 On July 27, 1981, counsel sent a letter to the Union and GMC requesting that all internal appeals of the pension denial be set in motion. Under the appeal procedure, a 'final determination' is made by an impartial medical clinic agreed to by both GMC and the Union. If the impartial clinic grants the pension, this decision is final and binding on the employee, the corporation, and the Union. However, if the clinic finds that the employee is not totally and permanently disabled, this decision is not final and binding; instead, the employee is sent back to GMC's medical department which attempts to find the employee a job within any medical restrictions. If no suitable job can be found the pension is automatically granted.
 
 
 17
 In considering a motion for summary judgment, the allegations of the party who defended against the motion will be taken as true and the court will read the record in the light most favorable to that party. Bosely v. City of Euclid, 496 F.2d 193, 197 (6th Cir. 1974). Plaintiff's version of the events leading to the denial of his internal appeal are as follows. On August 19, 1981, the Union requested that plaintiff's pension application be reviewed by Beaumont Hospital, the impartial clinic. Plaintiff's counsel averred that in a telephone call from the Union's counsel, Judith Sale, on August 20, 1981, he was advised that the impartial clinic review was to be conducted on the basis of records alone, without need of plaintiff's personal appearance. Nevertheless, without notice to plaintiff or himself, Beaumont scheduled an examination for September 21, 1981, which plaintiff failed to attend. In January of 1982, GMC's attorney informed plaintiff's counsel that plaintiff had failed to appear at the examination but reiterated that his personal appearance could be waived and the decision reached on the medical records alone if desired. However, plaintiff later received a notice of examination for June 22, 1982.
 
 
 18
 Plaintiff traveled the seventy (70) miles to Royal Oak, Michigan, and appeared at Beaumont Hospital for examination on the morning of June 22, 1982. Although plaintiff appeared for the morning session of testing, he left in the afternoon without completing a psychiatric examination. The examining doctor noted that plaintiff denied any history of mental illness or treatment, but, nonetheless, the doctor stated that '[a] review of the records would seem to indicate that Mr. Winchell does indeed have some psychiatric problem and . . . that these psychiatric problems may indeed be severe.' However, without an examination the doctor was unwilling to make a determination as to plaintiff's disability.
 
 
 19
 Upon learning of what transpired at Beaumont, plaintiff's counsel contacted plaintiff and surmised that he had panicked during the testing and left Beaumont when the doctors took a lunch break. Counsel asserts he was able to impress upon plaintiff the importance of finishing the examination and that plaintiff agreed to go back and complete the testing. Plaintiff's counsel stated that he conveyed this to GMC, the Union, and Beaumont Hospital, and repeatedly requested that the examination be rescheduled. On October 8, 1982, counsel took the deposition of Dr. Prior and for the first time learned that two (2) months earlier, on August 11, 1982, the pension appeal had been withdrawn from clinic review at the Union's request. The Union requested the withdrawal on the basis that plaintiff 'refused to cooperate' with Beaumont Hospital.
 
 
 20
 Plaintiff does not quarrel with application of the exhaustion of administrative remedies under the terms of the pension plan. See, e.g., Amato v. Bernard, 618 F.2d 559, 566-67 (9th Cir. 1980). His arguments are that (1) in light of the overwhelming evidence that plaintiff is psychotic (and in particular Dr. Landau's testimony that aversion to medical treatment is a symptom of the illness), his claim for disability pension benefits was denied because he was too disabled to cooperate and that such a denial is arbitrary; and (2) pursuit of the administrative remedies under the facts of this case should be excused because the remedies are futile and because he was denied meaningful access to the remedies.
 
 
 21
 Although we believe that a requirement that administrative remedies be exhausted represents sound policy, we also believe that such a requirement is not absolute. If resort to the administrative remedies is futile, Amato, supra, 618 F.2d at 568, or the claimant is wrongfully denied meaningful access to the remedies, Taylor v. Bakery and Confectionary Union and Industry International Welfare Fund, 455 F. Supp. 816, 820 (E.D.N.C. 1978); cf. Vaca v. Sipes, 386 U.S. 171, 185, 87 S. Ct. 903, 914 (1967) (contractual grievance), a court may abuse its discretion in refusing to exercise jurisdiction. In addition, 'processing claims in a perfunctory or arbitrary manner or in bad faith, or without the exercise of reasonable care, constitutes a breach of fiduciary duty under ERISA, . . .' Russell v. Massachusetts Mutual Life Insurance Co., 722 F.2d 482, 489 (9th Cir. 1983), cert. granted, 105 S. Ct. 81 (1984). We believe plaintiff has raised a question of fact as to these material issues such that the grant of summary judgment was error.
 
 
 22
 The remaining issues raised in this appeal may be quickly disposed of. Defendants argue that the court erred in refusing to dismiss this action for plaintiff's failure to appear for discovery depositions. After plaintiff failed to appear for a deposition following an order by the court obligating him to do so, defendants moved for dismissal pursuant to Federal Rule of Civil Procedure 37. The court denied the motion and instead ordered that plaintiff not be allowed to submit his affidavit either in support of, or in opposition to, any summary judgment motions.
 
 
 23
 Rule 37(d) provides that in a situation such as this, the court may make such orders as are just, including dismissal. In our view, the court's order herein was eminently appropriate, and it can in no way be said that the court abused its discretion in refusing to dismiss. See National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642, 96 S. Ct. 2778, 2780 (1976) (per curiam) (standard of review is abuse of discretion).
 
 
 24
 Defendants also argue that this action should be dismissed as untimely under DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S. Ct. 2281 (1983), which this court has held should be applied retroactively, Smith v. General Motors Corporation, 747 F.2d 372 (6th Cir. 1984) (en banc). Although it appears that at least part of plaintiff's action may have been filed in excess of six (6) months after accrual, plaintiff argues that the limitations period should be tolled for various reasons. Because defendants have not responded to these tolling arguments raised in plaintiff's reply brief and because these arguments in part involve factual issues, we believe it best for the district court to rule on this issue in the first instance. See also Shapiro v. Cook, 762 F.2d 49 (6th Cir. 1985) (per curiam).
 
 
 25
 Finally, defendants argue that the district court erred in dismissing plaintiff's pendent state law claims without prejudice and that those claims are preempted by federal law in any event. As the district court based its decision on the dismissal of plaintiff's federal claims, we will reverse the dismissal of the pendent claims in light of our above holdings. On remand, defendants may raise their preemption claims before the district court.
 
 III.
 
 26
 For the reasons stated herein, the district court's grant of summary judgment in favor of the Union and GMC is REVERSED as to all claims. The court's dismissal of plaintiff's pendent state law claims is also REVERSED. The court's refusal to dismiss as a discovery sanction is AFFIRMED. This action will thus be REMANDED to the district court for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Eugene E. Siler, Jr., Chief Judge, United States District Court for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 In so holding we do not rule that these are the only grounds upon which plaintiff may attempt to prove a breach of the duty or that there has been a breach of duty. We note that the Union has put forth plausible explanations for their actions. This, however, only underscores the material factual dispute at issue thereby making summary judgment improper