74 F.3d 1245
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
AMERICAN MEDICAL INTERNATIONAL, INC., and American Medical
International, Inc. Executive Severance Plan,
Plaintiffs-Appellees
v.
William E. VALLIANT, Defendant-Appellant
 No. 94-16573.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 8, 1995.
Decided Jan. 16, 1996.
 
 1
 Before: BOOCHEVER and REINHARDT, Circuit Judges, and KING,* District Judge.
 
 
 2
 MEMORANDUM*
 
 
 3
 Defendant/Appellant, William Valliant ("Valliant" or "Appellant") appeals from the district court's granting of Plaintiffs/Appellees, American Medical International, Inc. ("AMI") and the American Medical International, Inc. Executive Severance Plan's motion for summary judgment. The district court also dismissed Valliant's counterclaim and denied his motion for attorney's fees. For the reasons stated below, we find that summary judgment was inappropriate and reverse. We also reverse the order dismissing the counterclaim.
 
 I.
 
 4
 Valliant was employed as AMI's corporate vice president and Director of Taxes, under a two-year contract ("the Agreement") that commenced on September 1, 1988. The Agreement provided benefits under its employee welfare benefit plan. The Plan falls within the meaning of ERISA Sec. 3(1), 29 U.S.C. Sec. 1002(1).
 
 
 5
 On July 6, 1989, IMA Acquisition Corporation signed a merger agreement which culminated in its acquisition of 100% of AMI's stock. Valliant's employment was, as a result, terminated on June 15, 1990. Valliant received $343,814 in connection with the change in control of AMI. The parties are in disagreement over whether Valliant is entitled to further severance benefits.
 
 
 6
 Valliant argues that Secs. 7 and 9 of the Agreement are in conflict. Section 7 of the Agreement provided that, if within 24 months of a "Change in Control," Valliant was involuntarily terminated for any reason other than "misconduct" or if he voluntarily terminated his employment for "Good Reason," he would receive a "Change in Control Payment," as computed under the Agreement.
 
 
 7
 Section 9 of the Agreement provided, however, that if any "parachute payment"[1] would not be deductible by AMI under Section 280G of the Internal Revenue Code, then the "parachute payments" would be reduced so that the aggregate present value of the "parachute payments" equalled the maximum amount deductible by AMI under Code Section 280G.
 
 
 8
 In a letter to AMI, dated July 1, 1993, Valliant claimed that he was entitled to Termination Benefits under Sec. 8 of the Agreement,[2] and that such benefits were not "parachute payments." Valliant sent another letter expanding on his arguments. He then met with Douglas E. Rabe at the AMI headquarters in Dallas, Texas on August 17, 1993. At that meeting, Rabe gave Valliant a letter disputing Valliant's claim.
 
 
 9
 On September 10, 1993, Appellees brought this action to secure a declaration by the district court that Valliant is not entitled to any further severance benefits under the Agreement. The case was transferred from the Northern District of Texas to the Northern District of California, after which time Valliant filed a counterclaim seeking the severance benefits.
 
 II.
 
 10
 Whether exhaustion of administration remedies is required as a matter of law is reviewed de novo. See Diaz, 50 F.3d 1478, 1483 (9th Cir.1995) citing Amato v. Bernard, 618 F.2d 559, 566-68 (9th Cir.1980). The grant of summary judgment is also reviewed de novo. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127 (9th Cir.1995).
 
 
 11
 ERISA does not specifically provide an administrative exhaustion requirement. Amato v. Bernard, 618 F.2d 559, 566 (9th Cir.1980). As a general rule, however, a claimant must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court. Diaz v. United Agr. Employee Welf. Benefit Plan, 50 F.3d 1478, 1483 (9th Cir.1995) (citing Amato at 566-68).
 
 
 12
 Valliant contends that there was no final determination by the plan administrator with respect to his claim for payment of benefits. On September 2, 1993, AMI notified Valliant by letter that his initial request for benefits was denied. On September 10, 1993, AMI and the Plan filed this action in the Northern District of Texas for declaratory relief. The action was thus filed before the running of the 60 day appeal period, provided in section 5.5(a) of the Plan, discussed infra.
 
 
 13
 Exceptions exist to the exhaustion requirement. Diaz at 1484. A district court has discretion to waive the exhaustion requirement, Southeast Alaska Conservation Council v. Watson, 697 F.2d 1305, 1309 (9th Cir.1983), and should do so when exhaustion would be futile.
 
 
 14
 Appellees argue that exhaustion would be futile because Appellant was not proceeding in good faith throughout the negotiations. Additionally, Valliant failed to voice his concern regarding his loss of opportunity to exhaust until after the district court's order was issued.
 
 
 15
 Neither party can now complain about any failure to exhaust administrative remedies. Appellees abandoned the option to complain of a failure to exhaust on the part of Valliant when they instituted this action against him before he had a full opportunity to take advantage of that procedure. Valliant, in turn, waived any right to object to the company's action in depriving him of that opportunity when he failed to raise the issue in the district court. Hence, we will not require administrative exhaustion in this proceeding.
 
 III.
 
 16
 Summary judgment in a contract case is proper when the contract is not ambiguous. Whether the contract is ambiguous is a question of law for the court. United States v. Sacramento Mun. Util. Dist., 652 F.2d 1341 (9th Cir.1981). If the court determines that the contract is ambiguous and that the ambiguity is susceptible to more than one reasonable interpretation, a triable issue of fact is raised and summary judgment may not be granted. International Bhd. of Elec. Workers v. Southern Cal. Edison Co., 880 F.2d 104, 107 (9th Cir.1989).
 
 
 17
 When Valliant tendered his resignation, he requested a Change in Control Payment because his resignation was for "Good Reason," pursuant to Sec. 7 of the Agreement. AMI agreed, and paid him $292,670 in what AMI claimed was full satisfaction of the Change in Control Payment. AMI also paid Valliant $279,600 in cancellation of all of his stock options, pursuant to Sec. 8(c)(ii)[3] of the Agreement. Also, pursuant to Sec. 9[4] of the Agreement, Arthur Anderson determined that $51,144 of the stock option payment was contingent on the change in control, thus qualifying as a parachute payment. Because the Change in Control payment plus that portion of the stock option payment that qualified as a parachute payment exceeded the cap on parachute payments imposed by Sec. 9, AMI reduced his Change in Control payment by the amount that exceeded the cap. It was that reduction that led to the $292,670 payment, instead of a substantially higher one. AMI paid nothing to Valliant on account of Sec. 8(c)(i).
 
 
 18
 The dispute is whether Valliant's severance payments constitute "parachute payments" under Sec. 8(c)(i), subject to the payment limitation. The relevant portion of Code Section 280G(b)(2)(A) defines "parachute payment" as compensation if the payment is contingent on a change in the ownership or effective control of the corporation or in the ownership of a substantial portion of the assets of the corporation.
 
 
 19
 We find several ambiguities contained in the Agreement. There was a lack of certainty among the parties over whether Sec. 8 was subject to the parachute payment cap. It is not clear that the payments provided under that section were made as a consequence of the change in control. During oral argument, it appeared that the elimination of the international division might have occurred anyway.
 
 
 20
 There is also a question regarding whether the deduction of Sec. 8(c)(i) benefits was proper in view of the Sec. 7 provision precluding the use of Sec. 7 to reduce the payments under any other section. Section 7(e) specifically states that the amounts due "shall not be offset against or reduce any other amounts due under this Agreement or under any AMI benefit plan, policy or program." This possible inconsistency in the Agreement was not addressed in detail by the district court. We find that this question warrants further consideration.
 
 
 21
 The issue whether some of the payments are or are not a bonus and thus exempted from Sec. 9 is also unclear. AMI argued that an amount is not due under the Agreement if it is subject to the bonus payment limitation of Sec. 9. AMI thus asserts that Sec. 9 takes precedence over Sec. 7(e). However, nowhere in the Agreement is this assertion explained, and nothing would allow a reader to infer such precedence with any certitude.
 
 
 22
 Furthermore, Sec. 9 is entitled "Bonus Payment Limitation," which would lead one to infer that the limitations in Sec. 9 apply only to "bonus payments." Additionally, Secs. 4(b) and 7(c) refer to employee "bonuses" for each fiscal year, and employees "bonuses" after a change in control, respectively. Whether the Sec. 9 limitation should apply to any or all of these payments is yet another area that lacks clarity.
 
 
 23
 Finally, Sec. 7 may itself be exempt from Sec. 9, in view of subsection 7(e). The end result, apparently, was that $30,000 was deducted from the Sec. 7 payments and all of the Sec. 8(c)(i) payments were eliminated as well as some or all of the Sec. 4 amounts.
 
 
 24
 There thus appear to be some ambiguities on the face of the contract. Valliant, the nonmoving party, presented a reasonable interpretation of the relevant conflicting sections. Because the dispute revolves around the intent of the parties in agreeing on these sections, summary judgment was inappropriate.
 
 
 25
 We affirm the district court's denial of Valliant's motion for attorney's fees.
 
 
 26
 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS DISPOSITION.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 For purposes of the Agreement, the term 'parachute payment' is defined in accordance with Section 280(b)(2)(A)(ii) of the Internal Revenue Code of 1986, as amended. The relevant portion of this definition is:
 (2) Parachute payment defined--
 (A) In general--the term parachute payment means any payment in the nature of compensation to (or for the benefit of) a qualified individual if,
 (i) such payment is contingent on a change--
 (I) in the ownership or effective control of the corporation, or
 (II) in the ownership of a substantial portion of the assets of the corporation....
 However, the Agreement provides that, "[f]or purposes of this Section 9, the term 'parachute payment' shall have the meaning ascribed in Section 280(b)(2)(A) of the Code, without regard to Section 280G(b)(2)(A)(ii), but with regard to Section 280G(b)(4)(A); 'present value' shall be determined in accordance with Section 280G(d)(4)."
 
 
 [2]
 Section 8, entitled "Termination" provides:
 This Agreement may be terminated by (i) Employee's death, disability or retirement, (ii) by Employee for Good Reason or (iii) by AMI as set forth below.
 (a) Resignation. Employee may resign his position at any time. In the event of such resignation, except in the case of resignation for Good Reason (as defined below), Employee shall not be entitled to further compensation pursuant to this Agreement.
 (b) Retirement or Death. [describes provisions]
 (c) Discharge. [describes provisions]
 (d) Resignation for Good Reason. [describes provisions]
 (e) Disability. [describes provisions]
 (f) Notice of Termination. [describes provisions]
 (g) Date of Termination, Etc. [describes provisions]
 (h) Mitigation. [describes provisions]
 
 
 [3]
 8(c)(ii) reads:
 If Employee's employment is terminated by AMI for any reason other than his Misconduct or Disability, then subject to the earlier termination pursuant to the maximum option period provided under the Stock Option Plans, all of the Employee's stock options shall continue to vest during the period Employee is entitled to receive Base Compensation pursuant to Subsection 8(c)(i) hereof (regardless of whether Employee elects to receive such Base Compensation in a lump sum),....
 
 
 [4]
 Section 9, entitled "Bonus Payment Limitation," provides in part:
 In the event that it is determined that any "parachute payment" to be made by AMI for federal income tax purposes because of Section 280G of the Internal Revenue Code of 1986, as amended ("the Code"), then the "parachute payments" shall be reduced so that the aggregate "present value" of such "parachute payments" is equal to the maximum amount which will not cause any "parachute payment" to be nondeductible by AMI because of Section 280G of the Code....