MERRITT, Circuit Judge,
dissenting.
I disagree with my colleagues’ assertion that the “plaintiffs have only alleged violations of the SAP” and not the GM Pension Plan. This position is strange, indeed, be *157 cause the parties have always known that all of the retirees’ pensions would have to come from the GM Pension Plan. There is no other source, and no one ever believed that the SAP alone controlled the funding of the pensions. The case against GM, the only remaining defendant, may not be swept under the rug by simply saying that the Plaintiffs . are not making a claim against the GM Pension Plan.
The SAP was a one-time benefit agreement negotiated by GM, Delphi, and the UAW as a result of bad economic conditions in the auto industry and Delphi’s bankruptcy. The SAP provided a measure of pre-retirement wages if plaintiffs agreed to retire after 30 years of service. Although Plaintiffs do not claim to receive a pension from the SAP, they claim a pension benefit from GM derived in part from the SAP because the SAP allowed them to retire with “full” benefits, including a pension, once they reached 30 years of .combined service, even if they were below retirement age: “Employee will retire without additional incentives when they first accrue 30 years of accredited service under the provisions of the Delphi Hourly-Rate Employees’ Pension Plan.” SAP at 2.
The complaint in several places refers to the GM Pension Plan and attaches the GM Pension Plan summary as Exhibit H. Paragraph 45 of the complaint in Count I (seeking recovery in equitable estoppel) says that the GM Plan is the source of funds for plaintiffs’ pension benefits. Paragraph 69 states that the “reduction in plaintiffs’ pension benefits amount to a direct violation of the terms of the Plan,” not the SAP. The next paragraph of the complaint then states that these “pension benefit amounts should be immediately reinstated.” Moreover, the opinion of the district court notes that the GM Pension Plan is “referenced in multiple exhibits” and is “central to the plaintiffs’ claims.” Opn. at 5. In addition, at oral argument plaintiffs’ counsel answered my questions by saying that the SAP and the Pension Plan should be read together as descriptive of the relevant ERISA plan. GM’s lawyer then answered Judge Moore’s question along the same lines saying that the SAP should be viewed as a “gloss” on the GM Pension Plan.
Therefore, I do not agree with my colleagues that we can avoid the entire issue of pension entitlement because the retiree plaintiffs are not making any claim against GM under its retirement plan. It is the only place from which their pensions could be paid. There is no doubt that the retirees specifically claimed in their pleadings before the district court and before us on appeal that GM violated ERISA Section 502(a)(3) (providing for equitable estoppel) when GM refused to honor representations to them in a letter of March 20, 2009:
As a consequence of the Pension Asset Transfer, beginning April 1, 2009, your Delphi pension benefit and your GM pension benefit (if any) will be combined and will be paid in its entirety by the GM plan. The total gross amount of your pension benefit will not change.
The retirees claim that GM reduced their pensions thereafter and that this reduction violated the equitable estoppel provisions of ERISA. We should not try to avoid the fact that the retirees are invoking the GM pension plan and asking for the court to order GM not to reduce their pensions.
The real problem for Plaintiffs is that they did not exhaust their administrative remedies, as they should have, under the GM plan, a fact they conceded before the district court and on appeal. Although ERISA’s statutory language does not make exhaustion of administrative remedies a prerequisite to a civil enforcement action, we have long held that “[t]he administrative scheme of ERISA requires a *158 participant to exhaust his or her administrative remedies prior to commencing suit in federal court.” Miller v. Metro. Life Ins. Co., 925 F.2d 979, 986 (6th Cir.1991).
In this unusual case — where Plaintiffs allege equitable estoppel, breach of fiduciary duty, and denial of benefits claim with a complex factual background involving a pre — retirement agreement, discord between multiple employers, a bankruptcy and a subsequent transfer of pension obligations from Bosch to Delphi to GM — I conclude that Plaintiffs should have exhausted their administrative remedies under the GM plan before bringing suit. We can only do justice in this case by requiring the exhaustion of these remedies.
In the past, we have recognized “[t]he important public policy of encouraging private rather than judicial resolution of disputes under ERISA....” Costantino v. TRW, Inc., 13 F.3d 969, 974 (6th Cir.1994). We have also identified eight purposes of administrative exhaustion applicable to ERISA:
(1) To help reduce the number of frivolous law-suits under ERISA.
(2) To promote the consistent treatment of claims for benefits.
(3) To provide a nonadversarial method of claims settlement.
(4) To minimize the costs of claims settlement for all concerned.
(5) To enhance the ability of trustees of benefit plans to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes.
(6) To enhance the ability of trustees of benefit plans.
(7) To enhance the ability of trustees of benefit plans to interpret plan provisions.
(8)To help assemble a factual record which will assist a court in reviewing the fiduciaries’ actions.
Id. at 975 (citing Makar v. Health Care Corp. of the Mich-Atlantic (CareFirst), 872 F.2d 80, 83 (4th Cir.1989)); see also Amato v. Bernard, 618 F.2d 559, 567-68 (9th Cir. 1980).
These factors require exhaustion here. Simply put, we need a factual record to decide this case, which presents a difficult balancing of equities. It appears Delphi made a mistake in offering this pre-retirement program to Plaintiffs before it discovered Bosch would not consider them eligible for the program’s benefits. ^ Based on Delphi’s error, Plaintiffs retired early and now receive only about half of the retirement benefit they expected. The issue is who, if anyone, has the obligation to pay Plaintiffs the remaining benefits they expected, or should the loss fall only on the Plaintiffs.
For their part, Plaintiffs ask the court to impose the entire pension bill on GM. But significant factual questions remain unanswered about the extent of Delphi’s representations before Plaintiffs retired and GM’s obligations under the transfer of Delphi’s pension funds to GM. Without an administrative record explaining GM’s reason for denying Plaintiffs’ benefits and laying out a sequence of communication and promises between the parties, how the case should be decided is unclear. As a result, Plaintiffs must exhaust their administrative remedies before the federal court rules on the motion for judgment on the pleadings — just as the GM Pension Plan requires. We should not try to avoid the entire question by asserting that plaintiffs do not seek any relief against GM. That is not true.