995 F.2d 651
 143 L.R.R.M. (BNA) 2648, 125 Lab.Cas. P 10,716
 Ervin SHIMMAN, Plaintiff-Appellant,
v.
Frank J. MILLER, Individually and as Business Manager and
Editor of the Buckeye Engineer, Local Union No. 18, 18A,
18B, 18C, 18RA and 18G, International Union of Operating
Engineers; and Local Union No. 18, 18A, 18B, 18C, 18RA and
18G, International Union of Operating Engineers, Defendants-Appellees.
 No. 92-3399.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 25, 1993.
Decided June 14, 1993.
Rehearing Denied July 27, 1993.
 
 Alan Miles Ruben (briefed) and Stephen W. Gard (argued and briefed), Cleveland, OH, for plaintiff-appellant.
 William Fadel (argued) and Kathleen M. Sasala (briefed), Wuliger, Fadel & Beyer, Cleveland, OH, for defendants-appellees.
 Before: NORRIS and SILER, Circuit Judges; and HOOD, District Judge.*
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Plaintiff, Ervin Shimman, appeals the district court's judgment for defendants Frank J. Miller and the International Union of Operating Engineers, Local 18, in this action brought pursuant to the Labor-Management Reporting and Disclosure Act, 29 U.S.C. §§ 401-531. We are asked to decide whether defendants' refusal to publish plaintiff's letter to the editor in the union's newsletter violates the free speech provision of the Act, 29 U.S.C. § 411(a)(2).
 
 I.
 
 2
 Out of mounting concern for what it perceived to be a growing trend toward anti-democratic conduct by leaders of some of the nation's labor unions, in 1959 Congress enacted the Labor-Management Reporting and Disclosure Act (the Act). See 29 U.S.C. § 401. Among its protections, the Act contains a union member's "Bill of Rights," which guarantees every union member equal voting privileges, rights of free speech and assembly, and a right to bring suit. In its free speech section, the Act provides:
 
 
 3
 Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.
 
 
 4
 29 U.S.C. § 411(a)(2).
 
 
 5
 In Knox County Local, Nat'l Rural Letter Carriers' Ass'n v. National Rural Letter Carriers' Ass'n, 720 F.2d 936 (6th Cir.1984), this court dealt with a claim that § 411(a)(2) had been violated. There, the officers of the national union had negotiated a collective bargaining agreement with the postal service and used the national union's weekly magazine to urge ratification of the agreement. Id. at 937. The local union viewed the proposed contract as deficient and attempted to place an advertisement in the magazine that discouraged the agreement's ratification. The national union refused the ad, contending that it would create "internal union strife." Id.
 
 
 6
 This court noted that § 411 "was designed to allow members to participate actively in a 'democratic' union," and that while it did not incorporate the full body of First Amendment law, see United Steelworkers v. Sadlowski, 457 U.S. 102, 109, 102 S.Ct. 2339, 2344, 72 L.Ed.2d 707 (1982), a court's inquiry under § 411 is guided by First Amendment free speech principles. Id. 720 F.2d at 938-39. We concluded that the advertisement was the type of speech protected by the First Amendment and the Act. Moreover, the national union's refusal to publish the ad was "purely content-based." Id. at 940. This was impermissible because the union had " 'opened the forum' of its publication to the commercial speech of its members and of merchants." Id. In sum, the court held that § 411(a)(2) prevents "those in 'control' of a protected, open and exclusive forum of communication from unreasonably refusing to allow co-owners access to that forum based solely upon the content of their expression." Id. at 941.
 
 II.
 
 7
 The International Union of Operating Engineers, Local 18, represents between 12,700 and 14,000 operating engineers, who operate cranes, hoists, earth movers, and hauling equipment in eighty-five counties in Ohio and four counties in Kentucky. Since the 1950s, the international union has attracted attention for alleged unfair labor practices. Local 18 has experienced internal turmoil as well. Since the 1970s, this court has been called upon to review a number of disputes involving union members' claims for hiring hall discrimination, assaults, and unfair discipline.[1]
 
 
 8
 Plaintiff has been a member of Local 18 for over forty years, and has spent much of this time as a dissident in his relationship to officers of the local. He also has run for union office.
 
 
 9
 In 1984, Senator Orrin Hatch convened hearings of the Senate Committee on Labor and Human Resources to investigate charges of employment referral discrimination in the construction trade, with Local 18 being a target of scrutiny. Plaintiff, another Local 18 member, and their lawyer testified about alleged manipulation of the hiring hall by the local for the purpose of discriminating against those who disagreed with the policies of incumbent union leadership.
 
 
 10
 During this time, defendant Miller was business manager of Local 18 and editor of the local's newsletter, the Buckeye Engineer. When Miller became aware of the Hatch hearings, he published an article in the April 1984 issue of the Buckeye Engineer informing members that the "notorious anti-union senator, right-wing Republican Orin [sic] Hatch" recently had presided over hearings that were "neither fair nor impartial." In addition, Miller reported that[t]wo members of Local 18 were permitted to testify as was a lawyer representing members suing Local 18. Although the committee was notified in advance, Local 18's lawyer was not permitted to testify or present documents which would have clearly shown that the allegations and accusations were false or misleading. Most of the events giving rise to the allegations made by the two Local 18 members occurred in the late 1960's and mid-1970's, all of which have been litigated in the courts and are still pending on appeal.
 
 
 11
 Plaintiff interpreted this article as attacking him and responded with a letter to the editor. The letter explained the nature of the hearings and the allegations made before the committee and pointed out that Miller had declined the committee's invitation to testify. Plaintiff concluded with a request that his letter be published in the Buckeye Engineer, "so I too can get the truth before all the members of Local 18." Miller refused to print the letter. As his deposition testimony makes clear, the only reason for this refusal was that he disagreed with the letter's content.
 
 
 12
 Plaintiff filed suit in federal district court against Miller and Local 18, alleging that the refusal to publish his letter violated the free speech rights embodied in § 411(a)(2). In addition, he charged that there is no economically feasible alternative method by which to disseminate his message because few members attend meetings and no member is permitted to obtain the union mailing list. He requested the court to require Miller to pay damages, order defendants to print his letter to the editor responding to Miller's April 1984 article in the newsletter, and require defendants to adopt neutral procedures for allowing publication of members' views.
 
 
 13
 In April 1985, the district court dismissed the complaint for failure to state a claim, and in March 1986, this court reversed, holding that plaintiff had adequately stated a claim for relief.
 
 
 14
 On remand, after the case had been submitted to the court upon the record, the district court in March 1992 entered judgment for Local 18.[2] The court held that the union had not opened the Buckeye Engineer to the opinions of its members as required by Knox County. According to the district court, Miller, as editor, had the discretion to select what articles were printed. Therefore, his refusal to publish plaintiff's letter was not an unreasonable act of censorship in derogation of any rights to free speech which plaintiff might enjoy under the Act. The district court further concluded that the relief requested would result in an unjustified interference with internal union affairs, and also indicated that plaintiff may have failed to exhaust his intra-union remedies. Plaintiff appeals these rulings.
 
 III.
 
 15
 Local 18 asserts that this court should not hear the appeal because plaintiff failed to pursue his remedies within the union before filing suit. See 29 U.S.C. § 411(a)(4). We disagree. The union has not cited any pertinent remedies in its bylaws for the refusal to print a letter in the union newsletter. See Verville v. International Ass'n of Machinists & Aerospace Workers, 520 F.2d 615, 620 (6th Cir.1975) (exhaustion under § 411(a)(4) not required when union remedies are inadequate); see also Keeffe Bros. v. Teamsters Local 592, 562 F.2d 298, 303 (4th Cir.1977) ("a free speech violation generally justifies dispensing with administrative remedies"). Accordingly, this court has jurisdiction to hear plaintiff's appeal.
 
 IV.
 
 16
 In order to determine if Miller's refusal to publish plaintiff's letter violated the Act, we must ascertain whether the Buckeye Engineer was such a "protected, open and exclusive forum of communication" that Miller was prohibited from "unreasonably refusing to allow co-owners access to that forum based solely upon the content of their expression." Knox County, 720 F.2d at 941.
 
 
 17
 Initially, we note that since members have no access to the local's mailing list, the Buckeye Engineer is the exclusive means of communication for members wishing to present an alternate point of view to other union members. Moreover, member dues are the sole source of financing for the newsletter. As in Knox County, therefore, the publication is literally " 'owned' in equal shares by the members whose union dues finance [it]." Id. at 940. Finally, it is clear from the record that Miller's rejection of plaintiff's letter was entirely content-based.
 
 
 18
 Consequently, we are left with the question whether Miller and Local 18 had " 'opened the forum' of its publication" so that they were required to print plaintiff's letter in the Buckeye Engineer. Id. After a thorough review of the record, we conclude that, under the unique facts of this case, they had. We therefore reverse the judgment of the district court.
 
 
 19
 The record shows that on occasion Miller used the publication to defend against what he viewed as attacks by critics of Local 18, or, in a broader sense, challenges by legislators to the labor union movement in general. An example, of course, is Miller's April 1984 article dismissing as without foundation a congressional inquiry into charges that the local was engaging in discriminatory practices.
 
 
 20
 In addition, the newsletter regularly ran articles authored by then-Ohio Governor, Richard Celeste. The articles touted various programs of the Celeste administration that were favorable to organized labor, in a one-sided manner reminiscent of an advertisement by a candidate for political office.
 
 
 21
 Moreover, in 1986 the newsletter printed an anonymous letter from "A Brother Engineer" denouncing the reform efforts of union rebels. The letter stated:
 
 
 22
 This local Union, along with all organized labor, is being attacked from many sides. No longer are we able to form ranks as we have in the past.
 
 
 23
 Our foes are far too subtle for that. Instead, they use unfair legislation, twist the meaning of existing law to serve their own purposes and use every device possible to tear down and destroy what we all have worked so hard for, for so long.
 
 
 24
 The letter concluded by urging members to support Miller, both morally and monetarily, so that he would have a "fighting chance."[3]
 
 
 25
 What these examples reveal is an informal policy by those in charge of the Buckeye Engineer to use it as a platform for the opinions of individuals who supported Local 18's incumbent management and its views. To permit those leaders consistently to promote one point of view on internal union disputes, while effectively silencing the opposition by withholding the only feasible channel of communication, would contravene the Act's overriding objective of promoting union democracy.
 
 
 26
 Accordingly, we conclude that the Buckeye Engineer was an "open forum" for the discussion of union issues, within the meaning of Knox County, to the extent that plaintiff should have been permitted to respond to Miller's article criticizing plaintiff's action in speaking out against union management.
 
 
 27
 We decline, however, to frame a remedy as broad as plaintiff requests. On the basis of the record in this case, we would not be warranted in ordering the Buckeye Engineer to adopt general procedures accommodating the publication of members' views, because at this point such a broad prospective order would amount to an unjustifiable judicial interference with internal union affairs. This record does not reveal a pattern or magnitude of violation of the Act that would warrant such judicial intervention at this time. Our holding, that the Buckeye Engineer was required to print plaintiff's letter, adequately places defendants on notice that they must comply in the future with their obligation to accommodate free discussion by members in the pages of that publication. Accordingly, this cause is remanded to the district court for entry of an order directing defendants to print plaintiff's letter in its entirety, and, in view of plaintiff's success in this action having rendered a substantial service to his union as an institution and to all of its members by vindicating his own right of free speech as guaranteed by the Act, to consider an award of reasonable attorney's fees as prayed for by plaintiff. See Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).
 
 V.
 
 28
 The judgment of the district court is reversed, and this cause is remanded to that court for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 See, e.g., Murphy v. IUOE, Local 18, 774 F.2d 114 (6th Cir.1985) (dissident recovers for work referral discrimination, unfair discipline, intimidation, and physical violence), cert. denied, 475 U.S. 1017, 106 S.Ct. 1201, 89 L.Ed.2d 315 (1986); Shimman v. Frank, 625 F.2d 80 (6th Cir.1980) (plaintiff's brother beaten at union meeting), later proceeding, Shimman v. IUOE, Local 18, 744 F.2d 1226 (6th Cir.1984) (en banc), cert. denied, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985); NLRB v. IUOE, Local 18, 500 F.2d 48 (6th Cir.1974) (court enforces NLRB finding of violations of National Labor Relations Act for threatening members with loss of employment for opposing incumbent leadership). Miller was also a defendant in the Murphy case. See Murphy, 774 F.2d at 119
 
 
 [2]
 Miller died during the pendency of this case
 
 
 [3]
 Local 18 insists that this was not a letter from an actual union member but was merely "a draft created solely for the Union administration to communicate with the membership as a whole." However, the fact that the union generated an anonymous letter to encourage support for Miller, far from suggesting that the Buckeye Engineer was not an open forum, actually strengthens plaintiff's claim that he should have an opportunity to present an opposing viewpoint